261 N.J. Super. 409 (1993)
619 A.2d 232
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
J.G., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 8, 1992.
Decided January 6, 1993.
*412 Before BILDER, BAIME and WALLACE, JJ.
Zulima V. Farber, Public Defender, attorney for appellant (Robert Brigliadoro, designated counsel, of counsel and on the brief).
*413 Robert J. Del Tufo, Attorney General, attorney for respondent (Lisa Sarnoff Gochman, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This appeal presents novel questions concerning the newly created victim-counselor privilege. N.J.S.A. 2A:84A-22.15 provides that a victim counselor has a privilege not to be examined as a witness with regard to any confidential communication. In addition to extending a testimonial privilege, the statute renders immune from discovery or legal process records of the victim's statements. N.J.S.A. 2A:84A-22.13. We hold that the privilege is sufficiently broad to encompass the confidential communications of both direct and secondary victims of violence. Statements made by the mother of a sexually abused child to the counselor are thus protected from disclosure. We also find no basis to require an in camera inspection of confidential files. Absent some compelling reason, we view even such a limited disclosure as a substantial dilution of the statutory privilege. Finally, we conclude that the mistaken release of confidential files by the victim's counselor does not constitute a waiver of the privilege. The privilege may be waived only by the written consent of the victim or his or her guardian.
Other important questions are raised concerning the "tender years" exception to the hearsay rule and the admissibility of confessions. Evid.R. 63(33) permits introduction of a child's statement relating to a sexual assault if, after a hearing, the court finds, among other things, that the declaration is trustworthy. We hold that the court may not consider the congruity of the child's statement and the defendant's confession in determining the trustworthiness of the declaration. The statement must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial. *414 We also conclude that a police officer's promise to release a suspect from custody if he gives a statement does not, by itself, taint a confession. A police officer's promise, even if disingenuous, is merely one of the factors to be considered in deciding whether the defendant's will was overborne.

I.
Tried by a jury, defendant was found guilty of three counts of aggravated sexual assault (N.J.S.A. 2C:14-2a(1)), three counts of second degree endangering the welfare of a child (N.J.S.A. 2C:24-4b(4)), and three counts of third degree endangering the welfare of a child (N.J.S.A. 2C:24-4a). The trial court sentenced defendant to an aggregate term of 55 years and ordered him to serve 27 1/2 years without parole eligibility. The codefendant, Robert Perozzi, was convicted of similar offenses at the joint trial. He was sentenced to an aggregate term of 30 years and was directed to serve 12 years without parole eligibility. Separate appeals were filed. This opinion pertains solely to the arguments advanced by defendant J.G.[1]
On July 15, 1989, defendant's wife, who was blind, left her home for a 20 day training course at a "seeing eye dog" clinic in northern New Jersey. In her absence, defendant assumed sole parental responsibility for their four children who ranged in age from one to eight years old. During this period, defendant and Perozzi allegedly sexually abused the three oldest children. We need not describe in detail the sordid facts except as necessary to explicate our responses to defendant's arguments. Suffice it to say that defendant and Perozzi allegedly engaged in homosexual acts in the presence of the children, had them perform sexual acts with each other and with them, and photographed much of this aberrant conduct. In addition, defendant allegedly compelled each of the three children to *415 sleep with him on a rotating basis at which time he engaged in various sexual activities. Each of the children testified at trial and recounted the lurid details surrounding these crimes.
After the return of defendant's wife, she noticed that one of her children was having severe nightmares. Eventually, the child told her that she had been sexually abused by defendant. The local pastor, the family physician and the Division of Youth and Family Services were then notified. In varying degrees of detail, each of the children ultimately revealed what had transpired. Their statements were admitted at the trial under Evid.R. 63(33) after the judge determined that the foundational requisites were satisfied.
The children's accounts of these incidents were given in a series of interviews conducted by Detective Carl Metroka, a member of the State Police, over a period of time. Defendant's daughter was the first to reveal defendant's sexual abuse. Thereafter, defendant's two sons confided in their mother that other sexual acts had occurred. Initially, defendant was confronted with his daughter's accusations. After waiving his constitutional rights, defendant gave an audiotaped confession in which he admitted that he digitally penetrated his daughter's vagina on three occasions. After defendant's sons divulged other sexual misconduct, defendant was confronted with each new accusation and, after waiving his constitutional rights, confessed to having sexually abused each of them. Following an Evid.R. 8 hearing, defendant's statements were admitted into evidence.
Both defendant and Perozzi testified at trial. Perozzi denied that he was present at defendant's residence when the offenses were committed. Defendant denied all allegations of sexual abuse. He testified that his confessions were untrue and were made only after the police convinced him he could return home if he were to give a statement.

*416 II.
We first consider defendant's arguments pertaining to the victim-counselor privilege. A brief recitation of the salient facts is necessary for a complete understanding of defendant's contentions. Following defendant's arrest, his wife and the three infant victims underwent counseling by Family Services of Burlington County, a private nonprofit mental health group. Family Services provides counseling to families and children where allegations of sexual abuse have been made or there is a history of child abuse. As part of the program, a clinical team of social workers, all of whom hold masters degrees in their specialties, provide counseling under the supervision of a board certified psychiatrist and a clinical psychologist.
Prior to trial, defendant's former attorney, Janet Zoltanski, served a subpoena on Family Services, demanding the files of the three children and their mother. Apparently unaware of the privilege, a clerk employed by Family Services complied with the subpoena and the files were delivered to Zoltanski who examined them. Upon learning of the release of the files, the trial judge quashed the subpoena, ordered the return of the privileged documents and directed Zoltanski not to reveal their contents. The Public Defender's Office assigned another attorney to represent defendant.
Against this factual backdrop, defendant contends that (1) his wife was not a victim of the crimes alleged in the indictment and her file should have been released, (2) all of the files should have been submitted to the trial judge for an in camera inspection to determine whether they contained confidential information and, if so, whether the constitutional right of confrontation served to override the privilege, and (3) the inadvertent production of the documents by Family Services constituted a waiver. We disagree with all of these claims.
The victim-counselor privilege was enacted by the Legislature in 1987 and has yet to be allocated as a rule by the Supreme *417 Court. See Biunno, Current N.J.Rules of Evidence, Rule 26A-5 at 413 (1992). N.J.S.A. 2A:84A-22.15 provides as follows:
Subject to Rule 37 of the Rules of Evidence, a victim counselor has a privilege not to be examined as a witness in any civil or criminal proceeding with regard to any confidential communication. The privilege shall be claimed by the counselor unless otherwise instructed by prior written consent of the victim. When a victim is incompetent or deceased consent to disclosure may be given by the guardian, executor or administrator except when the guardian, executor or administrator is the defendant or has a relationship with the victim such that he has an interest in the outcome of the proceeding. The privilege may be knowingly waived by a juvenile. In any instance where the juvenile is, in the opinion of the judge, incapable of knowing consent, the parent or guardian of the juvenile may waive the privilege on behalf of the juvenile, provided that the parent or guardian is not the defendant and does not have a relationship with the defendant such that he has an interest in the outcome of the proceeding. A victim counselor or a victim cannot be compelled to provide testimony in any civil or criminal proceeding that would identify the name, address, location, or telephone number of a domestic violence shelter or any other facility that provided temporary emergency shelter to the victim of the offense or transaction that is the subject of the proceeding unless the facility is a party to the proceeding. (emphasis added).
The statute supersedes N.J.S.A. 2A:84A-22.11, which created a rape counselor privilege, and is intended to offer comparable protection to a broader class of victims. Biunno, Current N.J.Rules of Evidence, Comment to Rule 26A-5 at 415. The statutory language tracks that contained in a model law proposed by the United States Department of Justice, but the protection accorded by N.J.S.A. 2A:84A-22.15 is wider in scope. See Final Report of the President's Task Force on Victims (1982).
The articulated objectives of the privilege are set forth in the legislative findings and declarations contained in N.J.S.A. 2A:84A-22.13. In brief, the Legislature found that the psychological scars of victims of violent crimes can often be ameliorated by counseling, N.J.S.A. 2A:84A-22.13b, that treatment is most successful when the victims are assured their thoughts and feelings will not be disclosed, N.J.S.A. 2A:84A-13d, that confidentiality should be accorded to those who require counseling whether or not they are able to afford the services of private psychiatrists or psychologists, N.J.S.A. 2A:84A-13e, and *418 that it is the public policy of this State to bar disclosure of communications maintained by the counselor. N.J.S.A. 2A:84A-13. We are bound to construe the privilege consonant with its essential purpose.
Initially, we hold that the protection afforded by the privilege is broad enough to encompass both direct and indirect victims of crimes of violence. N.J.S.A. 2A:84A-22.14c defines "victim" as one "who consults a counselor for the purpose of securing advice, counseling or assistance concerning a mental, physical or emotional condition caused by an act of violence." Conspicuously absent from this definition is any requirement that only the primary target of a violent crime is protected. Instead, the statutory privilege encompasses those whose "emotional condition [is] caused by an act of violence" whether or not he or she is the individual upon whom the crime was perpetrated. N.J.S.A. 2A:84A-22.14c. By adopting this statutory definition, the Legislature recognized that emotional trauma can be as disabling as a visible physical wound, see N.J.S.A. 2A:84A-22.13; cf. Strachan v. John F. Kennedy Memorial Hosp., 109 N.J. 523, 538 A.2d 346 (1988); Saunderlin v. E.I. DuPont Co., 102 N.J. 402, 508 A.2d 1095 (1986); Portee v. Jaffee, 84 N.J. 88, 417 A.2d 521 (1980); Berman v. Allan, 80 N.J. 421, 404 A.2d 8 (1979); Zahorian v. Russell Fitt Real Estate Agency, 62 N.J. 399, 301 A.2d 754 (1973); Folzone v. Busch, 45 N.J. 559, 214 A.2d 12 (1965), and that the pain of violence is often felt by those other than the immediate victim. We have no occasion here to define the outermost limits of the protection accorded by the statute. However, we are entirely satisfied that the mother of a sexually abused child is a victim of the crime and that her communications with a counselor fall within the purview of the statutory privilege.
We also reject defendant's argument that the files should have been examined by the trial judge in camera to determine whether the information was confidential and, if so, whether the accused's right to a fair trial nevertheless militated *419 in favor of disclosure. In a variety of factual settings, we have required in camera inspection of otherwise confidential materials. See, e.g., State v. Postorino, 253 N.J. Super. 98, 601 A.2d 223 (App.Div. 1991); State v. Cusick, 219 N.J. Super. 452, 530 A.2d 806 (App.Div.), certif. denied, 109 N.J. 54, 532 A.2d 1118 (1987); Arena v. Saphier, 201 N.J. Super. 79, 492 A.2d 1020 (App.Div. 1985); United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 483 A.2d 821 (App.Div. 1984). However, we are reluctant to adopt this course where, as here, the statute grants an absolute privilege. See In re Maraziti, 233 N.J. Super. 488, 559 A.2d 447 (App.Div. 1989). We acknowledge that there are situations in which the defendant's constitutional rights are paramount and override the State's policy of protecting records and documents from disclosure. See, e.g., Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987); Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). However, even a preliminary disclosure of the contents of confidential files intrudes upon the victim's rights and dilutes the statutory privilege. We hold that in the absence of compelling circumstances, communications between a crime victim and a counselor consulted for treatment are absolutely immune from disclosure.
Finally, we conclude that Family Services' inadvertent release of the confidential files did not constitute a waiver of the privilege. We recognize that some courts have held the attorney-client privilege is waived by a mistaken disclosure. See, e.g., F.D.I.C. v. Marine Midland Realty Credit Corp., 138 F.R.D. 479 (E.D.Va. 1991); Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., 132 F.R.D. 204 (N.D.Ind. 1990); Suburban Sew 'n Sweep, Inc. v. Swiss-Bernina, Inc., 91 F.R.D. 254 (N.D.Ill. 1981); Underwater Storage, Inc. v. United States Rubber Co., 314 F. Supp. 546 (D.D.C. 1970). This approach is based on the premise that the privilege interferes with the search for the truth and therefore must be narrowly applied, see, e.g., F.D.I.C. v. Marine Midland Realty Credit Corp., 138 F.R.D. at 481, and that the risk of insufficient *420 precautions should rest with the party at fault, see, e.g., United States v. Kelsey-Hayes Wheel Co., 15 F.R.D. 461, 465 (E.D.Mich. 1954). Others have questioned this thesis, characterizing the traditional rule as "atavistic, generating... harsh results out of all proportion to the mistake of inadvertent disclosure." Mendenhall v. Barber-Greene Co., 531 F. Supp. 951, 955 n. 8 (N.D.Ill. 1982); see also Permian Corp. v. United States, 665 F.2d 1214 (D.C. Cir.1981); Transamerica Computer v. Intern. Business Machines, 573 F.2d 646 (9th Cir.1978); Bud Antle, Inc. v. Grow-Tech Inc., 131 F.R.D. 179 (N.D.Cal. 1990); Niagara Mohawk Power Corp. v. Stone & Webster Eng. Corp., 125 F.R.D. 578 (N.D.N.Y. 1989); Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc., 116 F.R.D. 46 (M.D.N.C. 1987); Hartford Fire Ins. Co. v. Garvey, 109 F.R.D. 323 (N.D.Cal. 1985); Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 104 F.R.D. 103 (S.D.N.Y. 1985), aff'd, 799 F.2d 867 (2d Cir.1986); W.R. Grace & Co. v. Pullman, Inc., 446 F. Supp. 771 (W.D.Okla. 1976); 8 Wigmore, Evidence § 2325-2326, at 633-34 (McNaughton rev. 1961); Note, Inadvertent Disclosure of Documents Subject to the Attorney-Client Privilege, 82 Mich.L.Rev. 598 (1983); George A. Davidsen and William H. Voth, Waiver of the Attorney-Client Privilege, 64 Or.L.Rev. 637, 644 (1986). The issue in terms of the attorney-client privilege is not before us. We question, however, whether our courts would adopt the strict approach and conclude that the privilege is automatically waived by reason of an inadvertent disclosure. See State v. Davis, 116 N.J. 341, 362-63, 561 A.2d 1082 (1989); State v. Loponio, 85 N.J.L. 357, 363, 88 A. 1045 (E. & A. 1913); State v. Tapia, 113 N.J. Super. 322, 330, 273 A.2d 769 (App.Div. 1971).
We are convinced that the mistaken release of confidential files does not abrogate the victim-counselor privilege. N.J.S.A. 2A:84A-22.15 expressly says that the privilege must be claimed by the counselor and cannot be waived "unless otherwise instructed by prior written consent of the victim." Waiver of the privilege rests solely with the victim, not the *421 counselor. If disclosure of privileged material is wrongfully or erroneously made by the counselor, evidence of the disclosed material is inadmissible. Evid.R. 38. Any other rule would render nugatory this State's strong public policy favoring the confidentiality of communications between victim and counselor.

III.
Defendant contends that the trial court erred by admitting into evidence the infant victims' statements. Following Evid.R. 8(1) hearings, the court found that the statements were trustworthy and thus admissible under the "tender years" exception to the hearsay rule. See Evid.R. 63(33). Regarding the statements made to Detective Metroka, the court observed that each child was questioned individually, that each provided detailed descriptions of sexual acts without prompting, and that the victims' accounts were corroborated by other evidence in the case including defendant's confessions. The court alluded to essentially the same circumstances in finding admissible the victims' statements to their mother. Although these statements were less detailed, the court determined that their reliability was established by the totality of the circumstances. The statements made to the family's pediatrician were found to be trustworthy because they were made "under clinical conditions," they disclosed a sexual knowledge beyond the ken of a young child, and they were corroborated by defendant's confessions. These findings and conclusions are supported by substantial, credible evidence present in the record. See State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964).
We add the following brief comments. Although we find the error harmless, we note that the trial court should not have considered defendant's confessions and other corroborative evidence in finding the victims' statements trustworthy under Evid.R. 63(33). In State v. D.R., 214 N.J. Super. 278, 518 A.2d 1122 (App.Div. 1986), rev'd on other grounds, 109 N.J. 348, *422 537 A.2d 667 (1988), we alluded to the congruity of a defendant's confession and the child's story in finding the victim's statement trustworthy. 214 N.J. Super. at 298, 518 A.2d 1122. However, in Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), the United States Supreme Court subsequently held that "evidence corroborating the truth of a hearsay statement may [not be considered] to support a finding that the statement bears `particularized guarantees of trustworthiness.'" Id. at 822, 110 S.Ct. at 3150, 111 L.Ed.2d at 656-57. The Court said that "[t]o be admissible under the Confrontation Clause, hearsay evidence must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." Ibid. The use of corroborating evidence to support a hearsay statement's "particularized guarantees of trustworthiness" would "permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial...." Ibid. The trial court thus erred by considering defendant's confessions in finding that the victims' statements were reliable. See State v. Roman, 248 N.J. Super. 144, 152-53, 590 A.2d 686 (App.Div. 1991).
We are nevertheless convinced that the other circumstances identified by the trial court supported its ultimate findings that the statements were admissible. In the overall setting, we view the judge's error as harmless beyond a reasonable doubt because the victims' statements clearly possessed the indicia of reliability.

IV.
Prior to trial, defendant moved to suppress his confessions. At the motion hearing, Detective Metroka testified that on September 14, 1989, he telephoned defendant and informed him of the allegations that were made by his daughter. Defendant replied that he had applied a prescription cream to his daughter's vagina, but had never engaged in sexual activities with her. The detective asked defendant to give a formal *423 statement at the State Police barracks. Metroka testified that he expected defendant's written statement would reflect the exculpatory account he had given orally. Based on that assumption, he told defendant that he would be permitted to return to his home after giving his statement.
When defendant arrived at the barracks, he was apprised of his constitutional rights and thereafter signed a waiver form. Questioning was initially conducted by Detective Edward McDonough. In the course of the interrogation, McDonough suggested that perhaps defendant had inserted his finger in his daughter's vagina thinking she was his wife. Defendant nodded in agreement, at which point McDonough suggested that he tell the truth. Defendant then admitted that he molested his daughter. After again being advised of his constitutional rights, defendant gave an audiotaped confession, approximately ten minutes in length.
Defendant was arrested the same day. After a brief stay in the Burlington County Jail, he posted bail and was released. As a condition of bail, defendant was required to remove his belongings from the family residence escorted by a State Police officer. In the interim period between defendant's release from jail and his return to the State Police barracks, Metroka learned of additional allegations of sexual misconduct. Upon entering the barracks, defendant was advised of his constitutional rights. After signing a waiver form, defendant admitted that he performed fellatio on both his sons.
The trial judge found both statements had been voluntarily given. In reaching this conclusion, the judge determined that Metroka's promise to release defendant was based upon his assumption J.G. would provide an exculpatory account. The judge concluded that the promise was not the determinative factor motivating the defendant to give the statements he now challenges. Defendant's confessions were said to be the product of his free and independent decision. We find no basis in *424 the record to disturb the judge's factual findings and legal conclusions.
Based upon our examination of the record, we are satisfied that defendant's confessions were the "product of an essentially free and unconstrained choice." Schneckloth v. Bustamonte, 412 U.S. 218, 225, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 862 (1973). We are in complete accord with the trial judge's conclusion that Metroka's promise to release defendant did not constitute an unlawful inducement so as to render the confessions involuntary. We acknowledge dictum in earlier decisions of the United States Supreme Court that a confession is involuntary if "extracted by any sort of threats or violence [or] obtained by any direct or implied promises, however slight." Bram v. United States, 168 U.S. 532, 542-43, 18 S.Ct. 183, 186-87, 42 L.Ed. 568, 573 (1897). However, in more recent opinions, the Court has disavowed the idea that an accused's statement induced by a promise is inherently involuntary. See Arizona v. Fulminante, 499 U.S. ___, ___, 111 S.Ct. 1246, 1251, 113 L.Ed.2d 302, 315, reh. denied, ___ U.S. ___, 111 S.Ct. 2067, 114 L.Ed.2d 472 (1991). Instead, the proper inquiry is whether, under the totality of circumstances, the defendant's "will has been overborne and his capacity for self-determination critically impaired." Schneckloth v. Bustamonte, 412 U.S. at 225-26, 93 S.Ct. at 2047, 36 L.Ed.2d at 862, quoting Culombe v. Connecticut, 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037, 1057 (1961). Among the relevant factors are "the defendant's age, education, intelligence, advice concerning his constitutional rights, and the nature of the questioning  specifically, whether the questioning was repeated and prolonged and whether it involved physical punishment or mental exhaustion." State v. Bey, 112 N.J. 123, 135, 548 A.2d 887 (1988); State v. Miller, 76 N.J. 392, 402, 388 A.2d 218 (1978).
Applying these principles, we are convinced that Metroka's promise to release defendant did not taint the confessions. In reaching this conclusion, we treat the officer's promise as *425 part of the totality of the circumstances. See Green v. Scully, 850 F.2d 894, 901 (2d Cir.), cert. denied, 488 U.S. 945, 109 S.Ct. 374, 102 L.Ed.2d 363 (1988); United States v. Pelton, 835 F.2d 1067, 1073 (4th Cir.1987), cert. denied, 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988); Miller v. Fenton, 796 F.2d 598, 605 (3d Cir.), cert. denied, 479 U.S. 989, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986); State v. DiFrisco, 118 N.J. 253, 257, 571 A.2d 914 (1990); State v. Watford, 261 N.J. Super. 151, 161, 618 A.2d 358 (App.Div. 1992) (Havey, J.A.D., concurring); State v. Starling, 188 N.J. Super. 127, 133-34, 456 A.2d 125 (Law Div. 1983), aff'd o.b., 207 N.J. Super. 79, 504 A.2d 18 (App.Div. 1985), certif. denied, 103 N.J. 481, 511 A.2d 658 (1986). The promise may have been disingenuous, but it was not false. State v. DiFrisco, 118 N.J. at 257, 571 A.2d 914. In the context of the overall picture, we are satisfied that the detective's comment did not overbear defendant's will.[2]

V.
Defendant's remaining arguments in which he challenges the fairness of the trial and the jury's verdict are clearly without merit. R. 2:11-3(e)(2). Specifically, we are entirely unpersuaded by defendant's claim that he was denied the effective assistance of counsel and that the jury's verdict was against the weight of the evidence.

VI.
Finally, we reject defendant's argument that the sentences imposed were excessive. As we noted earlier, defendant *426 was sentenced to an aggregate term of 55 years and was ordered to serve 27 1/2 years without parole eligibility. On two of the aggravated sexual assault convictions, defendant was sentenced to consecutive 20 year terms with ten year parole disqualifiers. The sentence on the third conviction for aggravated sexual assault, 20 years, is to run concurrently. The sentences on the three convictions for second degree endangering the welfare of a child, each ten years, are to run concurrently. Defendant received three consecutive five year sentences on the convictions for third degree endangering the welfare of a child, each with a 2 1/2 year parole disqualifier. These sentences are undoubtedly harsh. However, we find no abuse of the sentencing court's discretion.
In support of the sentences imposed, the court cited the heinous nature of the crimes, N.J.S.A. 2C:44-1a(1), the gravity and seriousness of the harm inflicted on the victims, N.J.S.A. 2C:44-1a(2), the risk of future criminal misconduct, N.J.S.A. 2C:44-1a(3), and the need to deter, N.J.S.A. 2C:44-1a(9). Each of these findings is "grounded in competent, reasonably credible evidence." State v. Roth, 95 N.J. 334, 363, 471 A.2d 370 (1984). The judge found only one factor in mitigation of sentence, defendant's lack of a criminal record. N.J.S.A. 2C:44-1b(7). This circumstance was said to pale when considered in the context of the aggravating factors. We cannot fairly say that the judge erred in reaching this conclusion. State v. Roth, 95 N.J. at 366, 471 A.2d 370. In light of these findings, the quantum of each sentence and the parole ineligibility term imposed were entirely appropriate. See State v. Ghertler, 114 N.J. 383, 390, 555 A.2d 553 (1989); State v. Kruse, 105 N.J. 354, 359-60, 521 A.2d 836 (1987).
Imposition of consecutive terms was not an abuse of discretion. The crimes were committed at different times and involved multiple victims. State v. Yarbough, 100 N.J. 627, 644, 498 A.2d 1239 (1985), cert. denied, 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986). Each offense involved a separate *427 act of violence. Ibid. Although the aggregate term exceeds the cumulative sentence for the two most serious crimes committed, ibid., this case is so extreme and so extraordinary that deviation from the guidelines is appropriate, id., at 647, 498 A.2d 1239. See also State v. Moore, 113 N.J. 239, 309, 550 A.2d 117 (1988); State v. Mujahid, 252 N.J. Super. 100, 120, 599 A.2d 536 (App.Div. 1991), certif. denied, 127 N.J. 561, 606 A.2d 372 (1992); State v. Craig, 237 N.J. Super. 407, 417, 568 A.2d 100 (App.Div. 1989), certif. denied, 121 N.J. 662, 583 A.2d 348 (1990); State v. Lewis, 223 N.J. Super. 145, 153-54, 538 A.2d 399 (App.Div.) certif. denied, 111 N.J. 584, 546 A.2d 510 (1988); State v. Day, 216 N.J. Super. 33, 37-38, 522 A.2d 1019 (App. Div.), certif. denied, 107 N.J. 640, 527 A.2d 462 (1987).
We acknowledge that the aggravated sexual assault and endangering the welfare of a child convictions somewhat overlap. See State v. Miller, 108 N.J. 112, 122, 527 A.2d 1362 (1987). We also recognize that where the offenses are closely related it would ordinarily be inappropriate to sentence a defendant to the maximum term for each offense and also require that those sentences be served consecutively. Ibid. However, it is equally plain that "the offenses are different because the crime of endangering the welfare of a child is aimed not only at specific conduct but also at the violation of the duty that a parent owes a child." Id. at 118, 527 A.2d 1362; see also State v. D.R., 109 N.J. at 377, 537 A.2d 667. Here, defendant's repeated violations of his parental duty were so egregious as to warrant cumulative penalties. Because his wife was blind and sought clinical assistance, defendant was able to treat his children as sexual pawns. The infant victims depended upon defendant for their safety and welfare. He abused this trust and, along with his homosexual lover, committed perversities beyond description. In that context, we cannot fairly conclude that the overall sentence was excessive.
Affirmed.
NOTES
[1] We have this day affirmed codefendant Perozzi's conviction and sentence. State v. Perozzi (A-5652-90T5).
[2] In his brief, defendant contends that he requested an attorney, but he was not allowed to call a "lawyer friend." This contention was not advanced in the pretrial Evid.R. 8 hearing. The point was raised for the first time in defendant's direct examination at the trial. We deem the argument waived. State v. McDougald, 120 N.J. 523, 562, 577 A.2d 419 (1990). In any event, we regard as dispositive the evidence presented at the Evid.R. 8 hearing. That evidence indicates that defendant declined to have an attorney present while in custody despite repeated warnings regarding his constitutional rights.