279 N.J. Super. 442 (1994)
652 A.2d 1273
TRILOGY COMMUNICATIONS, INC., PLAINTIFF,
v.
EXCOM REALTY, INC., DEFENDANT.
Superior Court of New Jersey, Law Division, Monmouth County.
Decided July 20, 1994.
Roger S. Mitchell, for plaintiff (Szaferman, Lakind, Blumstein, Watter & Blader, attorneys).
*443 Richard M. Eittreim, for defendant (McCarter & English, attorneys).
LEHRER, J.S.C.

INTRODUCTION
The inadvertent production of a privileged document in discovery does not constitute a waiver of the attorney-client privilege.

FACTS
Defendant, Excom Realty, Inc. (Excom) objected at trial to the admission of Exhibit P-25 in evidence. Exhibit P-25 is an unsigned draft letter dated January 31, 1990, from Tricia M. Caliguire of McCarter & English, counsel for Excom, to Arnold Lakind of Szaferman, Lakind, Blumstein, Watter & Blader, counsel for Trilogy. This letter was alleged to be confidential and prepared in draft for submission to Michael Brenner, Excoms's General Counsel, prior to being sent to Trilogy. The document was one of over 5,500 pages of documents produced in discovery and was inadvertently produced to plaintiff.
Excom objects to the admission of Exhibit P-25 in evidence on the grounds that P-25 is a privileged draft letter from retained counsel to the general counsel of Excom. The letter was sent for the purpose of information and approved prior to its being sent to plaintiff. There is no evidence that P-25 was ever received by Excom general counsel, ever transmitted to Trilogy's counsel, nor authorized to be disclosed by Excom.
The court finds P-25 is a confidential and privileged communication within the meaning of N.J.S.A. 2A:84A-20 and N.J.R.E. 504, inadvertently produced in discovery.

EXCOM'S INADVERTENT PRODUCTION OF P-25, A PRIVILEGED DOCUMENT, DOES NOT CONSTITUTE A WAIVER OF THE ATTORNEY-CLIENT PRIVILEGE
There are no New Jersey decisions which consider whether or not the inadvertent production of a confidential attorney-client *444 communication constitutes a waiver of the privilege. In State v. J.G., 261 N.J. Super. 409, 619 A.2d 232 (App.Div.), certif. denied, 133 N.J. 436, 627 A.2d 1142 (1993), the court held the inadvertent disclosure of a confidential Family Service file did not constitute a waiver of the victim-counselor privilege. The court stated:
We are convinced that the mistaken release of confidential files does not abrogate the victim-counselor privilege, N.J.S.A. 2A:84A-22.15 expressly says that the privilege must be claimed by the counselor and cannot be waived "unless otherwise instructed by prior written consent of the victim." Waiver of the privilege rests solely with the victim, not the counselor. If disclosure of privileged material is wrongfully or erroneously made by the counselor, evidence of the disclosed material is inadmissible. Evid.R. 38. Any other rule would render nugatory this State's strong public policy favoring the confidentiality of communications between victim and counselor.
* * * * * * * *
The issue in terms of the attorney-client privilege is not before us. We question, however, whether our courts would adopt the strict approach and conclude that the privilege is automatically waived by reason of an inadvertent disclosure. See State v. Davis, 116 N.J. 341, 362-63 [561 A.2d 1082] (1989); State v. Loponio, 85 N.J.L. 357 (E & A 1913); State v. Tapia, 113 N.J. Super. 322, 330 [273 A.2d 769] (App.Div. 1971).
[Id. 261 N.J. Super. at 420-21, 619 A.2d 232.]
There are three distinct lines of authority on this issue. The first, set forth by Dean Wigmore, holds that the privilege is destroyed by any involuntary disclosure including a mistaken one. See F.D.I.C. v. Marine Midland Realty Credit Corp., 138 F.R.D. 479 (E.D.Va. 1991); Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., 132 F.R.D. 204 (N.D.Ind. 1990); Suburban Sew 'N Sweep, Inc. v. Swiss-Bernina, Inc., 91 F.R.D. 254 (N.D.Ill. 1981); Underwater Storage, Inc. v. United States Rubber Co., 314 F. Supp. 546 (D.D.C. 1970). This rule's rationale is that the privilege interferes with the court's ability to determine the truth, and so must be construed narrowly.
"[T]he privilege remains an exception to the general duty to disclose. Its benefits are all indirect and speculative; its obstruction is plain and concrete... It is worth preserving for the sake of a general policy, but it is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." N.L.R.B. v. Harvey, 349 F.2d 900, 907 (4th Cir. 1965) (quoting 8 Wigmore on Evidence § 2292 (McNaughton rev. 1961)).
*445 The Wigmore rule must be rejected as it fails to take into account that the privilege is that of the client and must therefore be waived by the client. Waiver does not occur unless a known right is intentionally and deliberately relinquished. West Jersey Title and Guar. Co. v. Industrial Trust Co., 27 N.J. 144, 152, 141 A.2d 782 (1958).
Inadvertent disclosure through mere negligence or misfortune should not be deemed to abrogate the lawyer-client privilege. State v. J.G., 261 N.J. Super. 409, 619 A.2d 232 (App.Div. 1993).
The second line of authority as set forth in In re Grand Jury Proceedings, 727 F.2d 1352, 1356 (4th Cir.1984), holds that documents may lose their privileged status if the disclosing party did not take reasonable steps to insure and maintain their confidentiality. This rule is grounded in the notion that even though inadvertent disclosures are, by definition, unintentional acts, they may occur under circumstances of such extreme or gross negligence as to warrant the disclosure to be intentional, and thus a waiver.
In Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 104 F.R.D. 103 (S.D.N.Y. 1985), the court set forth elements to be considered in making the decision:
The elements that go into that determination include [1] the reasonableness of the precautions to prevent inadvertent disclosure, [2] the time taken to rectify the error, [3] the scope of the discovery and [4] the extent of the disclosure, [and (5) the overriding issue of fairness].
[Id. at 105.]
See also Alldread v. City of Grenada, 988 F.2d 1425, 1434-35 (5th Cir.1993); F.D.I.C. v. Marine Midland Realty Credit Corp., 138 F.R.D. 479, 482 (E.D.Va. 1991).
The third and better reasoned rule adopted by this court holds that mere inadvertent production of a privileged document by the attorney does not waive the client's privilege.
New Jersey has long recognized the important public policy reasons favoring the confidentiality of attorney-client communications. *446 The Supreme Court in In re Advisory Opinion No. 544 of N.J. Sup. Court, 103 N.J. 399, 511 A.2d 609 (1986), stated:
The major focus of the attorney-client privilege has historically and traditionally been upon the communications that occur or information that is exchanged between an attorney and his or her client relating to the special attorney-client relationship. The attorney-client privilege is recognized as one of "the oldest of the privileges for confidential communications." 8 J. Wigmore, Evidence § 2290, at 542 (McNaughton rev. 1961); see Hazard, "An Historical Perspective on the Attorney-Client Privilege," 66 Calif.L.Rev. 1061, 1071 (1978); Note, "The Attorney-Client Privilege: Fixed Rules, Balancing, and Constitutional Entitlement," 91 Harv.L.Rev. 464, 465 (1977). While the attorney-client privilege has evolved and changed in terms of its emphasis and applications, the primary justification and dominant rationale for the privilege has come to be the encouragement of free and full disclosure of information from the client to the attorney. This has led to the recognition that the privilege belongs to the client, rather than the attorney. Callen & David, "Professional Responsibility and the Duty of Confidentiality: Disclosure of Client Misconduct in an Adversary System," 29 Rutgers L.Rev. 332, 337 (1976); Annot., 16 A.L.R.3d 1047, 1050 (1967). Hence, the key element of this privilege has been a protective cloak of confidentiality applied to such exchanges. See C. McCormick, Evidence § 87, at 175-76 (2 ed. 1972); J. Wigmore, Evidence, supra, § 2290, at 543; Note, "The Attorney-Client Privilege in Class Actions: Fashioning an Exception to Promote Adequacy of Representation," 97 Harv.L.Rev. 947, 948 (1984).
The extent of the protection accorded communications and other information arising in the course of any attorney-client relationship is governed by the attorney-client privilege as well as several ethics standards. The attorney-client privilege itself, while rooted in the common law, has acquired a basis in both statute and rule. See N.J.S.A. 2A:84A-20; Evid.R. 26 [now 504]. This codification provides that communications between a lawyer and his or her client in the course of that relationship and in professional confidence are privileged; a client has a privilege (a) to refuse to disclose any such communication, and (b) to prevent his or her lawyer from disclosing it. N.J.S.A. 2A:84A-20. While in a sense the privilege belongs to the client, the lawyer is obligated to claim the privilege unless otherwise instructed by the client or the client's representative.
The scope of the attorney-client privilege or protection is also subject to ethics rules governing attorney conduct.
* * * * * * * *
The ethics rules generally forbid disclosure of client information, without the client's consent, unless one of the exceptions to the rule is available. Disclosure of client information is permissible if the client consents after consultation.
[Id. at 405-07, 511 A.2d 609.]
To hold that the inadvertent production of a privileged document is a waiver of the lawyer-client privilege would render nugatory this state's strong public policy favoring the confidentiality *447 of lawyer-client communications embodied in statute, rules of evidence, rules of professional ethics, and case law.
In Georgetown Manor, Inc. v. Ethan Allen, Inc., 753 F. Supp. 936, 938 (S.D.Fla. 1991), the court, in refusing to allow mere inadvertence to constitute a waiver, stated:
We are taught from first year law school that waiver imports the intentional relinquishment or abandonment of a known right. Inadvertent production is the antithesis of that concept.
See also Helman v. Murry's Steaks, Inc., 728 F. Supp. 1099, 1104 (D.Del. 1990); Kansas-Nebraska Natural Gas Co. v. Marathon Oil Co., 109 F.R.D. 12, 21 (D.Neb. 1983); Mendenhall v. Barber-Greene Co., 531 F. Supp. 951, 954-55 (N.D.Ill. 1982); International Business Mach. Corp. v. Sperry Rand Corp., 44 F.R.D. 10, 13 (D.Del. 1968) (waiver must be clear and intentional).
There can be no dispute, in New Jersey it must be shown the party charged with the waiver knew their legal rights and deliberately intended to relinquish them. Shebar v. Sanyo Business Sys. Corp., 111 N.J. 276, 291, 544 A.2d 377; (1988); Petrillo v. Bachenberg, 263 N.J. Super. 472, 480, 623 A.2d 272 (App.Div. 1993); Country Chevrolet, Inc. v. North Brunswick Planning Bd., 190 N.J. Super. 376, 380, 463 A.2d 960 (App.Div. 1983); State v. Morgenstein, 147 N.J. Super. 234, 238, 371 A.2d 96 (App.Div. 1977); Allstate Ins. Co. v. Howard Sav. Inst., 127 N.J. Super. 479, 488, 317 A.2d 770 (Ch.Div. 1974).
Clearly there has been no authorized or voluntary, intentional, deliberate relinquishment, or abandonment of the lawyer-client privilege by Excom.
The American Bar Association section of litigation supports this position:
Where the disclosure resulted because of the attorney's negligence and not that of the client, the client's privilege has not necessarily been relinquished. The more modern rationale, therefore, is that the negligence-free client, whose privilege it is in all events, should not bear the burden of global loss of an expectation of confidentiality because of the attorney's negligence in protecting that confidentiality.
*448 American Bar Association Section of Litigation, The Attorney-Client Privilege and the Work Product Doctrine, at p. 66 (2d ed. 1989).
The American Bar Association Committee on Professional Ethics and Grievances in its formal op. 368 (1992) stated:
A lawyer receiving materials that are subject to the attorney-client privilege or otherwise confidential, as a matter of ethical conduct contemplated by the precepts underlying the Model Rules, (a) should not examine the materials once the inadvertence is discovered, (b) should notify the sending lawyer of their receipt, and (c) should abide by the sending lawyer's instructions as to their disposition.
Inadvertent disclosure through mere negligence should not be deemed to abrogate the attorney-client privilege which is deeply embodied in New Jersey law and public policy. To hold otherwise would ignore the realities of modern litigation; the need to resolve matters quickly and inexpensively; time requirements of the court rules for the production of documents and discovery strictly enforced by case management orders and other techniques; and the volume of documents often required to be produced in complex litigation.
Excom's inadvertent production of a privileged document through its attorney during the course of its production of over 5,500 pages of documents, is not a waiver of the attorney-client privilege. The objection is sustained and P-25 will not be admitted in evidence.