775 A.2d 509

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. SAUL MOLINA, DEFENDANT–APPELLANT.

Argued March 13, 2001—Decided July 9, 2001.

*Matthew Astore*, Deputy Public Defender II, argued the cause for appellant (*Peter A. Garcia*, Acting Public Defender, attorney; *William P. Welaj*, Designated Counsel, and *Mr. Astore*, on the briefs).

*Russell J. Curley*, Deputy Attorney General, argued the cause for respondent (*John J. Farmer, Jr.*, Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

COLEMAN, J.

This is a companion case to *State v. Carey*, 168 *N.J.* 414, 775 *A.*2d 495 (2001), also decided today, which raises the issue of whether the trial court abused its discretion in imposing consecutive sentences for two vehicular-homicide convictions that arose from a single vehicular accident. As we held in *Carey*, when it is foreseeable that multiple victims are likely to be injured by the defendant's conduct, ordinarily two consecutive sentences should be imposed under the sentencing guidelines set forth in *State v. Yarbough*, 100 *N.J.* 627, 498 *A.*2d 1239 (1985), *cert. denied*, 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986). Accordingly, we affirm defendant's sentences.

I.

This case arises from a fatal multiple-vehicle accident. At approximately 11:17 p.m. on May 13, 1995, Carl and Mary Snyder were traveling northbound on Route 54 near Hammonton, New Jersey in their 1990 Dodge Ram Charger. As they approached the Atlantic City Expressway overpass, a vehicle operated by defendant was heading south on Route 54 when it suddenly veered

into the Snyders' lane of traffic. Carl Snyder, who was driving, was able to avoid a head-on collision by swerving to the right, but defendant's oncoming vehicle nevertheless struck the rear portion of the Snyders' vehicle. The Snyders' vehicle rolled over once or twice before coming to rest on its side. Miraculously, the Snyders walked away from the accident with only minor injuries.

Occupants of a 1993 Nissan Sentra immediately behind the Snyders were not so fortunate. George Rodriguez was driving his fiancée, Sonya Rosa, and two of their friends, Rudy Valentino and Christina Santiago, back from a wedding reception in Vineland, New Jersey. The Rodriguez vehicle was the second one to collide with defendant's vehicle. The force of the impact snapped George Rodriguez's neck so violently that he died at the scene from a severe spinal cord injury. Christina Santiago suffered massive injuries, including broken facial bones and lacerations to her liver and one lung. She was airlifted from the scene by helicopter, but died a short time later. Sonya Rosa and Rudy Valentino sustained less serious injuries and survived the accident.

Defendant and his uncle, Angel Molina, who was riding in the front passenger seat, received only minor cuts and bruises. After the accident, defendant told police that he was traveling southbound on Route 54 when the vehicle driven by George Rodriguez entered his lane to pass the Snyders. Defendant claimed that he swerved into the northbound land to avoid colliding with Rodriguez. Angel Molina was asleep at the time of the accident, so he could neither corroborate nor discredit defendant's version of events. Carl Snyder, Sonya Rosa, and Rudy Valentino testified that George Rodriguez was not attempting a pass when the accident occurred and that defendant veered into their lane without provocation.

At the hospital, defendant admitted to police that he had consumed two beers earlier that evening at a birthday party, but offered to drive home because his uncle was visibly intoxicated. A blood sample taken at the hospital approximately one hour and

fifteen minutes after the accident showed that defendant had a blood alcohol content (BAC) of .069.

Defendant was indicted on two counts of manslaughter, *N.J.S.A.* 2C:11–4b, and two counts of vehicular homicide, *N.J.S.A.* 2C:11–5. At trial, an expert witness testifying on behalf of the State extrapolated that defendant's BAC at the time of the accident was .085, which would have required defendant to have consumed at least six beers at the birthday party. That expert also testified that a .085 BAC would have impaired defendant's ability to operate an automobile safely.

The defense theory at trial was that defendant had been forced into the northbound lane by George Rodriguez, who was attempting to pass the Snyders' vehicle. A defense expert testified that defendant's BAC was .08 at the time of the accident, and that a determination could not be made with a reasonable degree of certainty concerning whether alcohol had been a major contributing factor to the cause of the accident. The defense also presented evidence that George Rodriguez's ability to operate a vehicle may have been impaired on the night in question. A post-mortem blood sample revealed that George Rodriguez had a .053 BAC at the time of the accident. It was also established that he had shared half a marijuana cigarette with Rudy Valentino before the wedding reception.

The jury acquitted defendant of the manslaughter charges, but convicted him on both counts of vehicular homicide. At the time of defendant's accident, *N.J.S.A.* 2C:11–5 provided that death by auto was a third-degree crime. In December 1995, the Legislature amended the statute. *L.* 1995, *c.* 285, §§ 1, 2. Among other things, the death-by-auto nomenclature was replaced by "vehicular homicide" and it was elevated to a crime of the second degree. *Ibid.* At the sentencing hearing, the trial court found no mitigating factors, but found several aggravating factors: that Molina would commit another offense; Molina's extensive prior criminal record and the seriousness of the offenses for which he was convicted; and the need for deterrence. *N.J.S.A.* 2C:44–1a(3), (6), (9). In

addition, defendant was driving while his license was suspended. The trial court imposed two consecutive five-year terms of imprisonment, each with two and one-half years of parole ineligibility. As for the decision to impose consecutive sentences, the trial court simply stated, "I'm going to sentence you on both—for both deaths, . . . and I am not making them concurrent."

On appeal, the Appellate Division affirmed the convictions and sentences. The panel acknowledged "that the trial court did not fully explicate its reasons for directing that defendant's sentences be served consecutively rather than concurrently," but it concluded that the trial court had not abused its sentencing discretion because serving concurrent sentences "could have [had] the effect of denigrating one of the deaths that resulted from defendant's actions." *See Yarbough, supra,* 100 *N.J.* at 643–44, 498 *A.*2d 1239. We granted defendant's petition for certification, "limited solely to the issue of whether the trial court properly imposed . . . consecutive sentences on defendant." 165 *N.J.* 674, 762 *A.*2d 655 (2000).

## II.

▮ Defendant argues that his consecutive sentences should be vacated because the trial court failed to explain its reason for imposing them. The New Jersey Code of Criminal Justice does not specify when consecutive sentences, rather than concurrent sentences, should be imposed. *N.J.S.A.* 2C:44–5a ("[M]ultiple sentences shall run concurrently or consecutively as the court determines at the time of sentence."). To achieve some semblance of uniformity, we established certain criteria in *Yarbough, supra,* 100 *N.J.* at 643–44, 498 *A.*2d 1239, to assist trial courts in making that determination. Most importantly, we instructed trial courts to focus on "five facts relating to the crimes":

> (a) the crimes and their objectives were predominantly independent of each other;

> (b) the crimes involved separate acts of violence or threats of violence;

> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

(d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous.

[*Id.* at 644, 498 *A.*2d 1239.]

In the present case, the only factor that supports consecutive sentences is the presence of multiple victims. We granted certification to determine whether a trial court has the discretion to impose consecutive sentences in cases where, as here, the only factor supporting consecutive sentencing is multiple victims. As we explained in *Carey, supra,* 168 *N.J.* at 428, 775 *A.*2d at 504, crimes involving multiple victims represent an especially suitable circumstance for the imposition of consecutive sentences because the "total impact of singular offenses against different victims will generally exceed the total impact on a single individual who is victimized multiple times." *Ibid.* (quoting *People v. Leung,* 5 *Cal.App.*4th 482, 7 *Cal.Rptr.*2d 290, 303–04 (1992)). As we held in *Carey,* "the multiple-victims factor is entitled to great weight and should ordinarily result in the imposition of at least two consecutive terms." *Id.* at 429–30, 775 *A.*2d at 505. Application of that principle to this case leads us to conclude that the sentencing court did not abuse its discretion by imposing consecutive sentences.

That said, a trial court is expected to give "a separate statement of reasons for its decision to impose consecutive sentences." *State v. Miller,* 108 *N.J.* 112, 122, 527 *A.*2d 1362 (1987). That requirement is crucial to the appellate review process. On occasion, however, we have dispensed with the need for a remand for a statement of those reasons when we are convinced that the sentences clearly fall within the sentencing guidelines. *See, e.g., State v. Perry,* 124 *N.J.* 128, 177, 590 *A.*2d 624 (1991) (affirming consecutive sentences despite absence of separate statement of reasons); *State v. Ghertler,* 114 *N.J.* 383, 392, 555 *A.*2d 553 (1989) (approving consecutive sentences even though trial court provided only a "terse" statement of reasons); *cf. State v. Pillot,* 115 *N.J.* 558, 566, 560 *A.*2d 634 (1989) (affirming length of sentence despite brief and unclear statement of reasons in support of length of

sentence); *State v. Jarbath*, 114 *N.J.* 394, 415, 555 *A.*2d 559 (1989) (holding that trial court's brief statement of reasons for determining length of sentence was sufficient). This is another such case. As we observed in *Carey*, the multiple-victims factor under the *Yarbough* sentencing guidelines is entitled to great weight and should ordinarily result in the imposition of at least two consecutive sentences. Accordingly, we are satisfied that the consecutive sentences imposed in the present case fall within the *Yarbough* guidelines, and a remand is unnecessary.

### III.

The judgment of the Appellate Division is affirmed.

LONG, J., dissenting.

In this case, the trial court sentenced defendant to the maximum custodial term of five years with a parole ineligibility period of two-and-one-half years on each of two counts of Death by Auto. The court designated the terms to run consecutively with no mention of *Yarbough* or its criteria. Noting that multiple-victims is the only factor that supports consecutive sentencing here, the majority upholds the sentences based on its conclusion in *State v. Carey*, 168 *N.J.* 413, 429–30, 775 *A.*2d 495, 505, that a multiple-victims case "should ordinarily result in the imposition of at least two consecutive terms." I dissent essentially for the reasons set forth in my opinion in *State v. Carey*, 168 *N.J.* 413, 775 *A.*2d 495 (2001).

I object as well to the fact that the majority has affirmed consecutive sentencing without regard to the trial court's imposition of the maximum term on each conviction that in itself violates the principle of *Yarbough* that "successive terms for the same offense should not ordinarily be equal to the punishment for the first offense." *State v. Rogers*, 124 *N.J.* 113, 119, 590 *A.*2d 234 (1991). Moreover, it is well established that "where the offenses are closely related it would ordinarily be inappropriate to sentence a defendant to the maximum term for each offense and also

require that those sentences be served consecutively." *State v. J.G.*, 261 *N.J.Super.* 409, 427, 619 *A.*2d 232 (App.Div.) (citing *State v. Miller*, 108 *N.J.* 112, 122, 527 *A.*2d 1362 (1987)), *certif. denied*, 133 *N.J.* 436, 627 *A.*2d 1142 (1993).

Accordingly, I would reverse the Appellate Division decision and remand for resentencing.

Justice ZAZZALI joins in this opinion.

*For affirmance*—Chief Justice PORITZ and Justices STEIN, COLEMAN, VERNIERO, and LaVECCHIA—5.

*Opposed*—Justices LONG and ZAZZALI—2.