238 N.J. Super. 121 (1990)
569 A.2d 282
LYNETTE TONELLI, PLAINTIFF-APPELLANT,
v.
SATYENDER KHANNA, M.D., DEFENDANT-RESPONDENT. and FRANKLIN DOTOLI, M.D., DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued October 17, 1989.
Decided January 23, 1990.
*123 Before Judges MICHELS, DEIGHAN and R.S. COHEN.
*124 William C. Bochet argued the cause for appellant (Muscarella, Hirschklau, Bochet, Feitlin & Edwards, P.C., attorneys; William C. Bochet, of counsel and Linda M. DeBrango on the brief).
John P. McGee argued the cause for respondent (McDermott, McGee & Ruprecht, attorneys; John P. McGee on the brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
Plaintiff Lynette M. Tonelli appeals from a jury verdict in a medical malpractice action awarding her $10,000 against defendant Satyender Khanna, M.D. and from a denial of her motion for a new trial as to damages or, in the alternative, an additur. Plaintiff contends that defendant Dr. Khanna performed unnecessary surgery upon her. Prior to trial, plaintiff agreed to a voluntary dismissal of the defendant, Franklin Dotoli, M.D. At the close of evidence, defendant Dr. Khanna's motion to dismiss an assault and battery count was granted. Plaintiff also moved for reinstatement of her claim for battery and punitive damages. Defendant Khanna cross-motioned for a new trial as to liability. The trial judge denied both motions.
During February 1985, plaintiff first noticed lumps and felt pain in her breasts. In March 1985, plaintiff visited Dr. Dotoli, her family physician, who examined her, palpated lumps in her breasts and prescribed vitamins and painkillers. On her second visit, Dr. Dotoli referred her to a radiologist, Dr. Guarnaccia, for a sonogram. Plaintiff had a sonogram performed by Dr. Guarnaccia and a second sonogram as well as a mammogram performed by Dr. Robinson.
As a result of these various examinations, conflicting diagnoses were reached. Dr. Guarnaccia's report noted a "well circumscribed, well outlined" area in her left breast that was probably cystic in origin. In his report to Dr. Dotoli, he recommended a biopsy. Dr. Robinson diagnosed plaintiff's condition as lobular hyperplasia, a condition not indicating *125 surgery. At plaintiff's request Dr. Robinson's report was forwarded to Dr. Dotoli. Based on these reports and his own observations, Dr. Dotoli referred plaintiff to defendant for surgical consultation.
After Dr. Dotoli read the reports of the other doctors to defendant over the phone, defendant examined plaintiff, palpating her breasts. Defendant then told plaintiff that she had a lump in her left breast and urged immediate surgery to remove the lump. According to defendant, he fully explained the potential consequences of the surgery. However, plaintiff cannot recall whether defendant explained the consequences. Nevertheless, on April 23, 1985, she did sign a consent form permitting defendant to perform a surgical procedure on her breasts to remove the lump.
On April 23, 1985, defendant made an incision on plaintiff's left breast and removed tissue. A pathology report on the excised tissue indicates that the tissue was stromal fibrosis, adenosis and sclerosis, indicating fibrocystic breast disease, a benign condition.
In May 1985, while visiting friends in Florida, plaintiff developed an infection in the area of the incision and visited a clinic emergency room in Florida. The clinic treated her with antibiotics to cure the infection. Upon returning to New Jersey, plaintiff visited Dr. Cicalese, a gynecologist, who diagnosed fibrocystic breast disease and treated plaintiff with hormones, vitamins and dietary modification. Plaintiff continues to have a scar about five inches long on the outer portion of her left breast. The lumps in her breasts remain but she is no longer apprehensive about her condition.
On appeal plaintiff contends that the trial court erred in dismissing her complaint for damages arising from defendant's intentional act of unnecessary surgery. In this respect, she argues that, as a matter of law, she established a prima facie case of battery from which the jury could have concluded that the defendant's conduct constituted an intentional wrong. She *126 further contends that her motion for a new trial as to damages, or in the alternative for additur, should have been granted because the award was a clear miscarriage of justice. We affirm.
The standard on a motion for an involuntary dismissal at trial is, accepting as true the evidence supporting plaintiff's claims and according plaintiff the benefit of all the favorable inferences, whether reasonable minds could differ concerning whether defendant committed battery upon plaintiff. Dolson v. Anastasia, 55 N.J. 2, 5, 258 A.2d 706 (1969). The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of evidence, but only with its existence, viewed most favorably to the party opposing the motion. Id. at 5-6, 258 A.2d 706.
Any non-consensual touching is a battery. Perna v. Pirozzi, 92 N.J. 446, 461, 457 A.2d 431 (1983). A doctor who conducts surgery without the patient's consent engages in unauthorized touching, and thus, commits battery. Id. at 461-462, 457 A.2d 431. Here, it is not disputed that plaintiff consented to the surgery. However, plaintiff argues that the consent was deficient because it was uninformed and based on intentional misrepresentations.

Battery and Uninformed Consent
Concerning plaintiff's contention that defendant's action constituted battery because she did not give informed consent, a distinction in theories of liability is important. Prior to conducting surgery on a patient, a doctor must obtain from the patient informed consent. This means that the doctor must disclose to the patient "such information as will enable the patient to make an evaluation of the nature of the treatment and of any attendant substantial risks, as well as of available options in the form of alternative therapies." Largey v. Rothman, 110 N.J. 204, 208, 540 A.2d 504 (1988). However, where *127 the plaintiff consents, albeit without adequate information, an action for battery is generally inappropriate.
The battery theory applies where the surgery was completely unauthorized as, for instance, where the plaintiff did not consent to the particular medical treatment provided. It does not usually address the issue of whether proper disclosure of risks has been given. Where the surgery was authorized but the consent was uninformed, negligence applies rather than battery. 2 D. Louisell & H. Williams, Medical Malpractice, § 22.04 at 22-16 (1987) (hereinafter Louisell & Williams); see F. Rosovsky, Consent to Treatment, A Practical Guide, § 1.2 at 6 (1984) (hereinafter Rosovsky); cf. Skripek v. Bergamo, 200 N.J. Super. 620, 633, 491 A.2d 1336 (1985) ("An action based on lack of informed consent is distinguishable from an action based on total failure to obtain any consent. The latter is not a negligence concept."). But cf. 61 Am.Jur.2d Physicians, Surgeons and Other Healers, § 199 at 331-332 (1981) ("The prevailing view ... classifies the physician's duty [to inform the patient] as a question of negligence because of the absence of the elements of any willful intent by the physician to injure his patient.... [I]t has been viewed as the better rule to allow the plaintiff to bring his action for failure ... to secure informed consent ... in either negligence or assault and battery.").
In dismissing plaintiff's battery count, Judge Newman relied on Judge Baime's opinion in Samoilov v. Raz, 222 N.J. Super. 108, 536 A.2d 275 (App.Div. 1987), and quoted at length a passage from the opinion, including the following:
[T]he battery theory should be reserved for those instances where the patient consented to the performance of one kind of operation and the physician performed a substantially different one for which authorization was not obtained.... That does not foreclose a plaintiff from claiming that the physician was negligent in failing to apprise the patient of the possible risk attendant to the operation. However, he may not properly contend that the doctor committed an intentional tort, an assault and battery. [at 119, 536 A.2d 275.]
Here, plaintiff consented to and authorized the surgery. The issue of whether there is a lack of informed consent is an issue involving negligence. Consequently, plaintiff's contention that *128 the battery claim should not have been dismissed due to uninformed consent is without merit.

Battery and Intentional Misrepresentation
There are, however, narrow exceptions to the principle that any consent prevents the use of the battery theory. If consent was obtained by the use of fraud or misrepresentation, an action for battery may be appropriate. Rosovsky, supra, § 1.2 at 61; Comment, 20 Rutgers L.J. 837, 840 n. 30 (1989); see Largey, 110 N.J. at 207-208, 540 A.2d 504 (the court noted that earlier cases relied on theories of fraud and misrepresentations to sustain a patient's action in battery, but distinguished them in that case because the Largey jury had determined as a matter of fact that the plaintiff had consented to the surgery). In the present case, plaintiff contends that defendant misrepresented her condition to her and fraudulently induced her to undergo surgery for his financial gain.
In support of her contention that defendant induced her to have surgery which he knew was unnecessary, plaintiff offers the following from which a jury could find fraud or misrepresentation: (1) defendant scheduled plaintiff for surgery on her first office visit, surgery to occur five days later; (2) defendant did not wait to evaluate the progress of Dr. Dotoli's alternative treatment; (3) defendant's expert published an opinion that surgeons have the luxury of time when dealing with breast lumps in women of plaintiff's age; (4) the testimony of the radiologist, Dr. Robinson and from Dr. Guarnaccia's reported findings. Based on the foregoing, plaintiff argues that a jury could have considered that defendant performed unnecessary surgery for his own financial gain and, moreover, defendant proposed further surgery in August 1985.
Judge Newman reviewed the evidence and determined that, at best the evidence could establish that defendant misdiagnosed plaintiff's condition and reacted in an "overkill" fashion in terms of surgical procedure used. He determined that no *129 evidence was presented from which a jury could determine that defendant's conduct constituted an intentional wrong. ("There is absolutely no iota of evidence of intentional tort....") We agree.

Punitive Damages
Punitive damages are awarded as punishment or deterrence for particularly egregious conduct. Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 48, 477 A.2d 1224 (1984), citing Leimgruber v. Claridge Associates, 73 N.J. 450, 454, 375 A.2d 652 (1977). To warrant a punitive damages award, defendant's conduct must have been wantonly reckless or malicious. There must be an intentional wrong in the sense of an "evilminded act" or an act accompanied by wanton and willful disregard of the rights of others. Nappe, 97 N.J. at 49, 477 A.2d 1224, citing DiGiovanni v. Pessel, 55 N.J. 188, 191, 260 A.2d 510 (1970). Absent wantonly reckless or malicious conduct, punitive damages may not be allowed. Buckley v. Trenton Sav. Fund Soc., 111 N.J. 355, 371, 544 A.2d 857 (1988), citing Nappe, 97 N.J. at 49, 477 A.2d 1224.
In order to prove that defendant fraudulently induced plaintiff to undergo surgery, plaintiff must have proved that: (1) defendant made a material misrepresentation of a presently existing or past fact; (2) with knowledge of its falsity; and (3) with the intent that plaintiff would rely thereon; (4) resulting in reasonable reliance; (5) to the plaintiff's detriment. Jewish Center of Sussex Cty. v. Whale, 86 N.J. 619, 432 A.2d 521 (1981). The second element of fraud is given the technical name of "scienter." Dobbs, Keeton, Owen, Prosser and Keeton on Torts, § 105 at 728 (5th Ed. 1984). However, plaintiff has failed to produce any evidence that defendant knew that the representation was false. Even if the opinion had been incorrect, if defendant had an honest belief, however unreasonable, that the representation was true, there would have been an insufficient basis for deceit. Prosser and Keeton, supra, *130 § 107 at 742. Thus, reasonable minds could not differ regarding whether the elements for fraudulent misrepresentation, and therefore battery, were established. Dolson, 55 N.J. at 5, 258 A.2d 706.

Damages
Next, plaintiff contends that the jury failed to fully appreciate the nature and extent of her pain and suffering, emotional injuries and permanent injuries. She claims that considering the volume of evidence admitted, the jurors did not allow ample time for full and proper deliberation. Plaintiff contends that, as a result, the jury awarded a verdict of damages which was "shockingly" inadequate. Consequently, she requests a new trial limited to damages or, in the alternative, an additur.
A motion for a new trial on damages should not be granted unless the damage verdict is so disproportionate to the injury as to shock the court's conscience and convince it that the award is manifestly unjust. Baxter v. Fairmount Food Co., 74 N.J. 588, 596, 379 A.2d 225 (1977); Tronolone v. Palmer, 224 N.J. Super. 92, 539 A.2d 1224 (App.Div. 1988). R. 4:49-1 provides that a trial judge shall grant a motion for a new trial "if, having given due regard to the opportunity for the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." See, e.g., Joy v. Barget, 215 N.J. Super. 268, 521 A.2d 906 (App.Div. 1987); Tomeo v. Northern Valley Swim Club, 201 N.J. Super. 416, 493 A.2d 544 (App.Div. 1985). Once the trial court has ruled on a motion for new trial an appellate court cannot reverse it unless "it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1.
The decision of whether to grant a new trial as to all or part of the issues or, alternatively, to decrease or increase a verdict are matters within the trial courts discretion, which is not to be disturbed by an appellate court except where the interests of *131 justice manifestly so require. Epstein v. Grand Union Co., 43 N.J. 251, 253, 203 A.2d 257 (1964). In Baxter, a case involving an issue of remittitur, the court, in discussing the test to be applied, stated that the trial judge should not interfere with the quantum of damages awarded by a jury unless it is so disproportionate to the injury and resulting disability as to shock his conscience and to convince him that to sustain the award would be manifestly unjust. 74 N.J. at 596, 379 A.2d 225.
Judge Newman determined that plaintiff failed to show that a miscarriage of justice had occurred. In denying plaintiff's motion for a new trial, the judge estimated that plaintiff's damages, which the jury determined to be $10,000, consisted of approximately $1,500 in lost wages, $3,000 medical expenses, pain and suffering, and compensation for permanent scarring. With regard to plaintiff's claim for damages for the scar, Judge Newman stated:
I think that plaintiff was hurt substantially in the testimony about the scar because when the scar is actually viewed, I think to call it a scar is a misnomer. I think [defense counsel's] characterization of it like being a scratch is a fairly accurate description of what is viewed when you see it, I believe on the side of the left breast... and I think in large part that may have influenced how the jury viewed her testimony as to damages overall and may have substantially affected her credibility as a witness....
The judge concluded, stating:
To me, [the verdict is] not shocking, and I think it's supported by the kind of testimony that was presented here in terms of wage loss and cost of the surgery, pain and suffering.
Again, I don't see any basis to overturn the jury's decision on the damages in this case and the plaintiff's motion for a new trial on damages only is denied.
For the reasons explained by Judge Newman, the interests of justice would not be served by disturbing his denial of plaintiff's motion for a new trial.
Lastly, plaintiff maintains the trial court should have granted an additur. An additur is an order denying plaintiff's application for a new trial, conditioned upon defendant's consent to an increase in the damage verdict as specified by the trial judge. Bitting v. Willett, 47 N.J. 6, 9, 218 A.2d 859 (1966); Tronolone v. Palmer, 224 N.J. Super. at 97, 539 A.2d 1224. *132 Since additur may be employed only in cases where a new trial as to damages is proper, Epstein, 43 N.J. at 252, 203 A.2d 257, we need not address the issue of plaintiff's request for additur in this case where a new trial as to damages would be improper.
Affirmed.