709 A.2d 1375

SANDRA L. SCHILLACI, PLAINTIFF–APPELLANT/CROSS–RE-
SPONDENT, v. FIRST FIDELITY BANK, DEFENDANT–RE-
SPONDENT/CROSS–APPELLANT, AND CUMBERLAND
FARMS, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 25, 1998—Decided May 20, 1998.

Before Judges BROCHIN, WEFING and BRAITHWAITE.

*Kyle N. Thompson,* argued the cause for appellant/cross-respondent (*Hannold, Marshall & Becker,* attorneys; *Mr. Thompson,* on the brief).

*Mark E. Utke,* argued the cause for respondent/cross-appellant (*Margolis Edelstein,* attorneys; *Mr. Utke,* on the brief).

*David S. Cohen,* argued the cause for respondent (*Edelstein, Mintzer & Sarowitz,* attorneys; *Lawrence M. Kelly,* on the brief).

The opinion of the court was delivered by

BROCHIN, J.A.D.

Plaintiff Sandra Schillaci was the manager of Cumberland Farms' Woodstown, New Jersey dairy store. Her duties included depositing the store's daily receipts of cash and food stamps in the bank. On November 7, 1992, she put the day's receipts, amounting to $1,325.52, in a night deposit bag and placed the bag in the night deposit box at the Woodstown branch of defendant First Fidelity Bank. On November 12, when she asked the bank for the deposit receipt, she was told that the deposit had not been received, and the bank subsequently confirmed that information to Cumberland Farms in writing. As a result, on November 16, 1992, Ms. Schillaci was fired and she became the subject of a police investigation. In fact, the missing receipts were in the deposit bag. The bag was wedged into the bank's night deposit box and was discovered when the bank attempted to dismantle the box in April 1993. The bank immediately notified Cumberland Farms, but neither of the defendants notified Ms. Schillaci or the police. During the summer of 1994, she happened to meet someone who worked as a teller at the Woodstown branch of the First Fidelity Bank and learned from her that the deposit bag and its contents had been recovered.

Ms. Schillaci sued First Fidelity Bank and Cumberland Farms. She alleged that the bank was liable to her because of its negligence; because it defamed her by its false statements which implied that she had stolen her employer's money; and because it caused her emotional distress by failing to notify her promptly when the deposit bag was found. She alleged that Cumberland Farms defamed her by, in effect, accusing her of theft in the store in the presence of customers and caused her severe emotional

distress by failing to notify her when it learned that the deposit bag had been recovered. She claimed both compensatory and punitive damages.

Plaintiff's negligence claim against First Fidelity Bank was permitted to go to trial and resulted in a judgment in her favor on a jury verdict of $23,000 damages to compensate her for lost earnings. But her other claims were dismissed before trial. Her defamation claims were dismissed on the ground that they were barred by the applicable statute of limitations. She has not appealed that ruling. Her claims for intentional or reckless infliction of emotional distress and her claims for punitive damages were dismissed on motions for summary judgment.

On appeal, plaintiff challenges these adverse pretrial rulings and defendant First Fidelity Bank cross-appeals from the judgment entered on the jury verdict. Plaintiff contends that the trial court erred in dismissing her emotional distress claims against First Fidelity Bank because her severe emotional distress was a natural and foreseeable result of the bank's "outrageous conduct/negligence"; the trial court erred in dismissing her punitive damages claims against First Fidelity Bank because the bank's conduct was "willful and wanton"; and the trial court erred in dismissing her emotional distress and reputation damage claims against First Fidelity Bank because she has a valid damage claim based on *N.J.S.A.* 12A:4–101 to –504. Plaintiff also challenges a ruling sustaining the bank's claim of attorney-client privilege for a document disclosed during pretrial discovery. Plaintiff argues that the trial court erred in granting summary judgment in favor of Cumberland Farms because that company breached its duty to notify her when the missing deposit bag was found.

In evaluating plaintiff's challenges to the orders of summary judgment and First Fidelity Bank's cross-appeal from the judgment entered on a jury verdict in her favor, we are required to " 'look at the evidence and inferences which may reasonably be deduced therefrom in a light most favorable to the plaintiff' " and we "must grant all the favorable inferences to the non-movant."

*Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 536, 666 *A.*2d 146 (1995) (quoting *Bell v. Eastern Beef Co.*, 42 *N.J.* 126, 129, 199 *A.*2d 646 (1964)). The following statement of the disputed facts relevant to the issues on appeal is guided by that standard.

On November 12, 1992, when First Fidelity Bank told Ms. Schillaci that it had not received the night deposit which she had made on November 7, 1992, she immediately informed her supervisor, Luana Van Vianen. Ms. Schillaci and Ms. Van Vianen went to the bank and spoke to the branch manager, Susan Redfield. Ms. Van Vianen asked Ms. Redfield to have the night deposit box dismantled in the presence of a representative of Cumberland Farms. Ms. Redfield agreed. Having a locksmith dismantle the box was not an unusual procedure and would cost $40.

However, the bank did not have a locksmith dismantle the box. Instead, a Woodstown policeman, Patrolman John Hollinger, looked into the deposit box with a flashlight on November 14, 1992. He did not find the missing deposit bag. Cumberland Farms was not notified in advance of this inspection and did not have any representative present at the bank when it was conducted. Afterwards, when Ms. Schillaci and Ms. Van Vianen were scheduled to go to the bank to witness the box being dismantled, Ms. Redfield told them, falsely, that it had already been dismantled. Later that month, a maintenance man who worked for the bank also looked into the box with a flashlight. Again, no one representing Cumberland Farms was present, the box was not dismantled, and the bag was not found.

In November 1992, Ms. Schillaci was questioned in the Cumberland Farms store by the company's security personnel. She claims that the questioning was conducted within earshot of customers and other employees. Cumberland Farms also reported its loss to the police who interrogated Ms. Schillaci as a suspect in their theft investigation. The following April, a bank customer at another branch reported a missing night deposit. A locksmith dismantled the box at that branch and found the deposit bag. A bank employee thought of the missing Cumberland Farms bag,

remembered that the two boxes were similar, and had the locksmith go to the Woodstown branch to dismantle the box. When the locksmith examined the box, he found the bag. The bank promptly notified Cumberland Farms and paid it the amount of the deposit. The bank did not notify Ms. Schillaci or the police that the bag had been found.

Ms. Schillaci contends that the tensions which arose from her having been fired from her job because she was suspected of theft adversely affected her relations with her father and probably contributed to strains between herself and her husband which led to their separation and, ultimately, to their divorce. She also alleges that Woodstown, in which she both lived and worked, is a small town where everyone knows everyone else and, although she was unable to offer any proof, she felt that everyone in town thought she was a thief. She testified that she was badly upset by the accusation, but she did not seek psychiatric or psychological counseling because she could not afford it.

When Ms. Schillaci was fired, she had been making approximately $480 a week, including bonuses. She was unemployed for six months after her termination and collected $240 a week in unemployment compensation. Thereafter, she was employed at a series of jobs, all of them at lower wages than she had been earning at Cumberland Farms. She quit one of the jobs because of sexual harassment and another because of the working conditions. She lost one job because she had to be absent from work for an appendicitis operation, and she lost another job because there was a theft loss and she was under suspicion as the result of what had happened at Cumberland Farms. At the time of trial, she was employed, earning between $6 and $7.73 an hour.

The jury's award of $23,000 to Ms. Schillaci for lost earnings was based on its finding that First Fidelity Bank "was negligent in its handling of the night deposit bag," presumably because of its failure to promptly dismantle the box to search for the missing deposit bag. Punitive damages cannot be awarded for negligence or even for gross negligence. *Nappe v. Anschelewitz,*

*Barr, Ansell & Bonello,* 97 *N.J.* 37, 49–50, 477 *A.*2d 1224 (1984); *Tonelli v. Khanna,* 238 *N.J.Super.* 121, 129, 569 *A.*2d 282 (App. Div.), *certif. denied,* 121 *N.J.* 657, 583 *A.*2d 344 (1990). The bank committed two intentional acts, however, which Ms. Schillaci contends breached its duty to her. Those breaches were, first, its representing to her that it had dismantled the box and, secondly, purposely refraining from notifying her when the missing deposit was found. Whether the trial court's dismissal of her claim for punitive damages against First Fidelity Bank was proper depends on whether either or both of those acts were breaches of the bank's duty to Ms. Schillaci and whether an award of punitive damages for either or both of them would be sustainable.

■ The bank's statement that the deposit box had been dismantled is actionable. The statement was false when made. The bank clearly intended that Ms. Schillaci and Cumberland Farms rely on the statement. It injured Ms. Schillaci because it seemed to disprove her claim that she had put the bag in the night deposit chute and, thereby, heightened the suspicion that she had stolen it. Ms. Schillaci and Cumberland Farms relied on the statement by refraining from making any further demands to have the box dismantled and, although Cumberland Farms claims to have fired Ms. Schillaci for a different reason, a jury could reasonably find that Cumberland Farms relied on the bank's statement to Ms. Schillaci's detriment by accepting the report of the result of the bank's search as evidence that the bank did not receive the deposit and as cause for firing her. *See Tonelli, supra,* 238 *N.J.Super.* at 129–30, 569 *A.*2d 282 (elements of fraudulent misrepresentation are: "(1) defendant made a material misrepresentation of a presently existing or past fact; (2) with knowledge of its falsity; and (3) with the intent that plaintiff would rely thereon; (4) resulting in reasonable reliance; (5) to the plaintiff's detriment") (citing *Jewish Ctr. v. Whale,* 86 *N.J.* 619, 432 *A.*2d 521 (1981)).

■ Ms. Schillaci, however, does not have a cause of action for First Fidelity Bank's failure to notify her when the deposit bag was found. When the deposit was found, the bank had a legal

obligation to promptly notify Cumberland Farms because "[o]ne party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated ... (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so." *Restatement (Second) of Torts* § 551(2) (1977); *see id.* comment h; *see also Refrigeration Indus., Inc. v. Nemmers,* 880 *S.W.2d* 912, 919 (Mo.Ct.App.1994) (speaker in business transaction has duty to correct original statement that subsequently changed where listener had no reason to believe circumstances had changed); *cf. Brown v. Honiss,* 74 *N.J.L.* 501, 508–09, 68 *A.* 150 (E. & A.1907) ("[A] person who makes a false representation in good faith, believing at the time that it is true, is guilty of fraud, if on afterwards ascertaining the falsity of the representation, he fails to correct his statement.") (citation omitted). However, the bank did not have a legal obligation to notify Ms. Schillaci because its business relationship was not with her, but with Cumberland Farms.

Nonetheless, the jury could readily find that the bank had a moral responsibility to alleviate the consequences which it had caused for Ms. Schillaci by notifying her promptly when the missing deposit was found. On the basis of such a finding, the jury could also reasonably conclude that the bank's failure to notify Ms. Schillaci was evidence that, both when the deposit was found and when the bank made its false statement, it was acting with the wanton recklessness or malice that will justify an award of punitive damages. *Cf. Perth Amboy Iron Works, Inc. v. American Home Assurance Co.,* 226 *N.J.Super.* 200, 218 n. 15, 543 *A.2d* 1020 (App.Div.1988), *aff'd,* 118 *N.J.* 249, 571 *A.2d* 294 (1990) ("[I]ntent to deceive may be shown circumstantially by ... subsequent acts.").

The intentionally untrue statement by the branch manager of First Fidelity Bank's Woodstown branch would warrant the jury's awarding punitive damages against the bank. "[I]t is especially

fitting to allow punitive damages for actions such as legal fraud, since intent rather than mere negligence is the requisite state of mind." *Nappe, supra,* 97 *N.J.* at 50, 477 *A.*2d 1224. Our Supreme Court reiterated this rule even more clearly in *Gennari v. Weichert Co. Realtors,* 148 *N.J.* 582, 610, 691 *A.*2d 350 (1997), "Because [defendants] are liable for common-law fraud, they are subject to punitive damages." The Court explained that their conduct was "willfully and wantonly reckless or malicious" because the " 'sole purpose for [their] misrepresentations to plaintiffs was to get them into the [real estate] development, take their money, and make a profit, without regard to the consequence that plaintiffs would have to live in homes built by inexperienced and careless subcontractors.' " *Id.* at 610–11, 691 *A.*2d 350 (quoting *Gennari v. Weichert Co. Realtors,* 288 *N.J.Super.* 504, 552–53, 672 *A.*2d 1190 (App.Div.1996), *aff'd as modified,* 148 *N.J.* 582, 691 *A.*2d 350 (1997)) (other citation omitted). An award of punitive damages has been upheld against a defendant whose fraudulent misrepresentation consisted of passing four postdated checks for which he knew there would be insufficient funds. *Stochastic Decisions v. DiDomenico,* 236 *N.J.Super.* 388, 395–96, 565 *A.*2d 1133 (App.Div.1989), *certif. denied,* 121 *N.J.* 607, 583 *A.*2d 309 (1990). A defendant was liable for punitive damages because he committed a fraudulent misrepresentation by turning back an automobile odometer. *Wildstein v. Tru Motors, Inc.,* 227 *N.J.Super.* 331, 334–35, 547 *A.*2d 340 (Law Div.1988). The fraudulent concealment of a memorandum that was material to an employee's personal injury action against an equipment manufacturer justified the award of punitive damages against the employer and its complicit supervisory employees. *Viviano v. CBS, Inc.,* 251 *N.J.Super.* 113, 129, 597 *A.*2d 543 (App.Div.1991), *certif. denied,* 127 *N.J.* 565, 606 *A.*2d 375 (1992).

■ The statement to Ms. Schillaci and to the Cumberland Farms supervisor by First Fidelity Bank's branch manager that the Woodstown night deposit box had been dismantled in a futile search for the missing bag was, as we have indicated, a fraudulent

misrepresentation. Whatever the motive for the falsehood, it manifested a wanton or reckless disregard for the obvious fact that the statement would be viewed as tending to prove that Ms. Schillaci was a thief, exposing her to the loss of her job, injury to her reputation, and possible criminal prosecution. The cited cases provide ample authority for our holding that a jury would have been entitled to return a verdict for punitive damages against First Fidelity in the present case. The trial court's ruling dismissing plaintiff's claim for punitive damages against the bank was therefore error.

To recover on a claim for either intentional or negligent infliction of emotional distress, plaintiff is required to show, among other things, that she has suffered emotional distress " 'so severe that no reasonable man could be expected to endure it.' " *Buckley v. Trenton Saving Fund Soc'y,* 111 *N.J.* 355, 366–67, 544 *A.*2d 857 (1988) (quoting *Restatement (Second) of Torts* § 46 comment j (1965)). "Severe emotional distress" means a " 'severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so, including ... posttraumatic stress disorder.' " *Taylor v. Metzger,* 152 *N.J.* 490, 515, 706 *A.*2d 685 (1998) (quoting *Poole v. Copland, Inc.,* 125 *N.C.App.* 235, 481 *S.E.*2d 88, 93, *review allowed in part,* 346 *N.C.* 282, 487 *S.E.*2d 552 (1997)). As in *Lingar v. Live–In Companions, Inc.,* 300 *N.J.Super.* 22, 692 *A.*2d 61 (App.Div.1997), where the plaintiffs claimed they were "emotionally traumatized" by the defendant's fraud, although Ms. Schillaci was " 'acutely upset' by reason of the incident, [her] emotional distress was not 'sufficiently substantial to result in physical illness or serious psychological sequelae.' " *Id.* at 27, 35, 692 *A.*2d 61 (quoting *Eyrich v. Dam,* 193 *N.J.Super.* 244, 253, 473 *A.*2d 539 (App.Div.), *certif. denied,* 97 *N.J.* 583, 483 *A.*2d 127 (1984)); *see also, Gautam v. De Luca,* 215 *N.J.Super.* 388, 399, 521 *A.*2d 1343 (App.Div.), *certif. denied,* 109 *N.J.* 39, 532 *A.*2d 1107 (1987). Because Ms. Schillaci failed to establish severe emotional distress, which is a prerequisite of a

cause of action for negligent infliction of emotional distress, that claim was properly dismissed.

■ We also reject plaintiff's contention that she stated a viable claim for emotional distress and reputation damage under *N.J.S.A.* 12A:4–103. That section of the Bank Deposits and Collections chapter of the Uniform Commercial Code reads:

> The measure of damages for failure to exercise ordinary care *in handling an item* is the amount of the item reduced by an amount that could not have been realized by the exercise of ordinary care. If there is also bad faith it includes any other damages the party suffered as a proximate consequence.
>
> [*N.J.S.A.* 12A:4–103e (emphasis added).]

"Item" is a defined term. *N.J.S.A.* 12A–4–104(9) defines it as "an instrument or a promise or order to pay money handled by a bank for collection or payment." In other words, the section relied on by plaintiff deals with banks' handling of checks and promissory notes submitted for collection or payment. The provision is entirely inapplicable to the present case.

Plaintiff has not demonstrated the merits of her contention that the trial court erred in excluding an attorney-client memorandum from evidence. She argues that the attorney-client privilege was waived because the memorandum was provided during discovery. However, neither the record submitted to us nor plaintiff's brief discloses sufficient facts to show whether or not the release of the memorandum during discovery was knowing and intentional rather than inadvertent. *See N.J.R.E.* 530 (to be effective, a waiver must have been made "with knowledge of [the] right or privilege"); *State v. J.G.,* 261 *N.J.Super.* 409, 419–21, 619 *A.*2d 232 (App.Div.), *certif. denied,* 133 *N.J.* 436, 627 *A.*2d 1142 (1993) (counselor's inadvertent disclosure of confidential files does not constitute waiver of victim-counselor privilege); *Trilogy Communications, Inc. v. Excom Realty, Inc.,* 279 *N.J.Super.* 442, 445, 652 *A.*2d 1273 (Law Div.1994) ("Inadvertent disclosure through mere negligence or misfortune should not be deemed to abrogate the lawyer-client privilege.") (citation omitted). The issue of whether or not the disclosure was inadvertent must be determined on remand.

■ Plaintiff's sole argument against the dismissal of her claims against Cumberland Farms is that it breached a duty to notify her when the missing deposit bag was found. Even if it owed her such a duty, however, its failure to notify her would not warrant punitive damages and, as we have already ruled, she is not entitled to recover for her emotional distress. There is no evidence that Ms. Schillaci obtained higher paying employment when her name was cleared. Consequently, there is no evidence that she suffered any compensable injury as the result of Cumberland Farms' failure to notify her of her vindication. We conclude, therefore, that it is unnecessary for us to decide whether Cumberland Farms owed her a legal duty to notify her when the missing deposit bag was found.

First Fidelity Bank's argument in support of its cross-appeal is that the trial court should have ruled that, as a matter of law, its mishandling of the missing deposit was not a proximate cause of any loss of earnings Ms. Schillaci experienced subsequent to the first job which she held after being fired by Cumberland Farms. This argument is entirely without merit. *R.* 2:11–3(e)(1)(E).

The dismissal of plaintiff's claim for punitive damages against First Fidelity Bank is reversed and that claim is remanded to the Law Division for further proceedings consistent with this opinion. In all other respects, the judgments appealed from are affirmed.