768 A.2d 195 (2001)
338 N.J. Super. 33
Joseph HOWARD and Marie Howard, Plaintiffs-Appellants,
v.
UNIVERSITY OF MEDICINE AND DENTISTRY OF NEW JERSEY, Dr. C. Ruebenacker, Dr. C. Vaicys, Dr. Grigorian, M. Felix, Kristin Schwerzer, J. Esposito, E. Wheeler, Karen Romano, Jonathan Dalmer, John Does 1-25 (fictitious names), Jim Does 1-25 (fictitious names), Betty Does 1-25 (fictitious names), and ABC Corps. 1-20 (fictitious names), Defendants, and
Dr. Robert Heary, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued January 18, 2001.
Decided March 13, 2001.
*196 Bruce H. Nagel, Livingston, argued the cause for appellants (Nagel, Rice, Dreifuss & Mazie, attorneys; Mr. Nagel of counsel; Adam M. Slater and Susan F. Connors, on the brief).
Matthew S. Schorr, Springfield, argued the cause for respondent, Robert Heary, M.D., (McDonough, Korn & Eichhorn, attorneys; Mr. Schorr, of counsel; Andrew V. Ha, on the brief).
Before Judges BAIME, CARCHMAN and LINTNER.
The opinion of the court was delivered by LINTNER, J.A.D.
Plaintiffs, Joseph and Marie Howard, appeal an order denying their motion to amend their complaint to include a count for fraudulent misrepresentations against defendant, Dr. Robert F. Heary. Leave to appeal, R. 2:2-4, was granted on October 4, 2000. We now reverse.
Joseph Howard[1] suffered from cervical myelopathy secondary to cervical stenosis and a significantly large C3-C4 disc herniation. On March 5, 1997, he underwent surgical intervention consisting of anterior cervical decompressions with corpectomies of the C4, C5 and C6 vertebral bodies. The surgery was not successful and plaintiff was rendered a quadriplegic. Dr. Heary, a neurosurgeon and assistant professor at the University of Medicine and Dentistry in Newark (UMDNJ), performed the surgery. On March 4, 1999, plaintiff filed a complaint alleging that Dr Heary and others at UMDNJ were negligent, having deviated from the standard of care required for his treatment and care.
Dr. Heary's deposition was conducted on June 9, 2000, at which time he testified that he became board certified more than two years after he performed the surgery on plaintiff. He also testified that he had performed "a couple of dozen" similar procedures prior to the time of plaintiff's surgery. Plaintiff's deposition was taken on June 22, 2000. Plaintiff testified that, prior *197 to deciding to undergo surgery and in response to specific inquiries made by his wife, Dr. Heary advised that he was board certified and had performed approximately sixty similar operations per year for a period of eleven years. Plaintiff's motion to amend the complaint was filed on July 17, 2000, in response to which Dr. Heary submitted a certification denying that he had made the representations claimed by plaintiff.
Plaintiff contends the denial of his motion to amend was error, while defendant asserts that it was properly denied. Both parties raise the entire controversy doctrine. Plaintiff argues that the doctrine requires joinder of the fraud and negligence claims. Defendant counters that plaintiff's fraud based claim has no merit and plaintiff has waived the entire controversy doctrine by not pleading it as an affirmative defense.
Generally, leave to amend is to be freely given without consideration of the ultimate merits of the amendment. Kernan v. One Washington Park, 154 N.J. 437, 456, 713 A.2d 411 (1998). Nevertheless, the denial of a motion to amend where "the interests of justice require" is addressed to the sound discretion of the court. Wm. Blanchard Co. v. Beach Concrete Co. Inc., 150 N.J.Super. 277, 299, 375 A.2d 675 (App.Div.), certif. den., 75 N.J. 528, 384 A.2d 507 (1977). We have observed that "denial of such a motion in the `interests of justice' is usually only required when there would be prejudice to another party." Brower v. Gonnella, 222 N.J.Super. 75, 80, 535 A.2d 1006 (App.Div. 1987). Thus, we have held that, even though a plaintiff may be precluded from filing a subsequent action under the entire controversy doctrine where leave to amend to assert a different cause of action is denied, such denial is not an abuse of discretion where the amendment is so late as to prejudice other parties. Wm. Blanchard, supra, 150 N.J.Super. at 299, 375 A.2d 675. Likewise, it is not an abuse of discretion to deny amendments on the eve of trial nor should late amendments be permitted at the last minute as to do so would "afford a refuge to languid or dilatory litigants." Branch v. Emery Transportation Co., 53 N.J.Super. 367, 375, 147 A.2d 556 (App.Div.1958); see Jackson v. Georgia-Pacific Corp., 296 N.J.Super. 1, 10-11, 685 A.2d 1329 (App.Div.1996), certif. den., 149 N.J. 141, 693 A.2d 110 (1997).
Here, the record reflects that the timing of the motion to amend was not prejudicial to defendant, as the trial date had been adjourned to sometime in December and was not imminent. We are satisfied that defendant has not presented any showing of undue prejudice that would qualify to support the proposition that leave to amend was properly denied in the interest of justice.
Dr. Heary argues that the motion judge's refusal to permit the amendment was proper because plaintiff's claim based upon deceit is "marginal at best." He asserts that, in order to recover damages for the alleged misrepresentations, plaintiff must still prove that his quadriplegia resulted from defendant's negligent performance of the surgery. We disagree.
In Perna v. Pirozzi, 92 N.J. 446, 463, 457 A.2d 431 (1983), the Court discussed a patient's claim against a doctor who did not operate as promised but, instead, had another doctor perform the surgery. In reaching its holding that any non-consensual touching is battery, the Court in Perna pointed out the importance of the decision making process that a patient goes through when deciding to undergo surgery. The court observed:
Even more private than the decision who may touch one's body is the decision who may cut it open and invade it with hands and instruments.
....
Few decisions bespeak greater trust and confidence than the decision of a patient to proceed with surgery.

[Id. at 461-64, 457 A.2d 431.]
*198 Generally, battery is not available as a cause of action where the patient has consented to and authorized the surgery actually performed. Samoilov v. Raz, 222 N.J.Super. 108, 536 A.2d 275 (App.Div. 1987). In such instances, plaintiff's cause of action is based upon the failure to obtain informed consent, which is
essentially a negligence concept, predicated on the duty of a physician to disclose to a patient such information as will enable the patient to make an evaluation of the nature of the treatment and of any attendant substantial risks, as well as of available options in the form of alternative therapies.
[Largey v. Rothman, 110 N.J. 204, 208, 540 A.2d 504 (1988).]
In Tonelli v. Khanna, we recognized that a narrow exception exists to the general rule precluding the use of battery when consent to operate is obtained. 238 N.J.Super. 121, 128, 569 A.2d 282 (App. Div.), certif. denied, 121 N.J. 657, 583 A.2d 344 (1990). We observed that "[i]f consent was obtained by the use of fraud or misrepresentation, an act for battery may be appropriate." Ibid. See Duttry v. Patterson, 741 A.2d 199, 202 (Pa.Super.1999). In Tonelli, supra, we stated that a deceit based claim is established in the following way.
In order to prove that defendant fraudulently induced plaintiff to undergo surgery, plaintiff must have proved that: (1) defendant made a material misrepresentation of a presently existing or past fact; (2) with knowledge of its falsity; and (3) with the intent that plaintiff would rely thereon; (4) resulting in reasonable reliance; (5) to the plaintiff's detriment.

[238 N.J.Super. at 129, 569 A.2d 282.]
Here, plaintiff's deceit based claim is not marginal. If Dr. Heary lied about his qualifications and experience, then a jury could find that he misled plaintiff as to the abilities and, hence, the true identity of the physician who would perform the surgery. Under such circumstances, plaintiff is entitled to damages for injuries proximately caused by the surgery if plaintiff can show reasonable reliance and detriment. Like battery, the alleged deceit goes directly to the description of the person whom the patient authorized and believed was to perform the surgery, thus resulting in an abrogation of plaintiff's consent.
Where an action is predicated upon battery, plaintiff is not required to show that the physician deviated from the appropriate standard of care in performing the surgery. Perna, supra, 92 N.J. at 460, 457 A.2d 431. Even if harmless, plaintiff is entitled to nominal damages for "an unauthorized invasion of the plaintiff's person." Id. at 460, 457 A.2d 431. To warrant punitive damages, the defendant's conduct must be either an "evil-minded act" or an act accompanied by willful and wanton disregard of the patients rights. Tonelli, supra, 238 N.J.Super. at 129, 569 A.2d 282. We point out the following additional language from Perna, supra, 92 N.J. at 460-461, 457 A.2d 431, as it may have a bearing on the damage claims that may be developed on remand.
The plaintiff may further recover for all injuries proximately caused by the mere performance of the operation, whether the result of negligence or not. See Pugsley v. Privette, 220 Va. 892, 263 S.E.2d 69, 76 (Va.1980). See generally Prosser, supra. § 42. If an operation is properly performed, albeit by a surgeon operating without the consent of the patient, and the patient suffers no injuries except those which foreseeably follow from the operation, then a jury could find that the substitution of surgeons did not cause any compensable injury. Even there, however, a jury could award damages for mental anguish resulting from the belated knowledge that the operation was performed by a doctor to whom the patient had not given consent.
The nature of recoverable damages that might otherwise be supported by a battery based claim has not been presented as an *199 issue in this appeal. The issue, while very important, is necessarily dependent upon facts and perhaps opinions that go far beyond the record before us and are likely to be developed as discovery continues. We, therefore, do not decide the issue but instead leave its ultimate resolution to the trial judge after a fully developed record can be established. Jackson v. Muhlenberg Hospital, 53 N.J. 138, 142, 249 A.2d 65 (1969).
We, nevertheless, feel constrained to make the following cautionary observation to aid the trial judge on remand. The amendment to plaintiff's complaint adds a second cause of action that has distinctly different elements then the claim of medical malpractice. The malpractice claim, unlike the deceit based claim, requires expert testimony to establish that the surgeon deviated from an acceptable standard of care which was a proximate cause of the damages claimed. Ritondo v. Pekala, 275 N.J.Super. 109, 115, 645 A.2d 802 (App. Div.), certif. denied, 139 N.J. 186, 652 A.2d 174 (1994). The deceit based claim, depending on the facts presented at trial, may also necessitate expert testimony on the issue of plaintiff's resulting condition and whether or not it was a foreseeable outcome of the type of surgery performed. Perna, supra, 92 N.J. at 460-461, 457 A. 2d 431. While we cannot predict either the actual theories of recovery sought by plaintiff or the precise nature of each defense, we can envision several different scenarios that might be presented. Therefore, the trial judge will be required to relate the factual allegations of each claim and carefully explain the different proof requirements to the jury, when instructing the elements of the different causes of action and defenses presented. Velazquez v. Portadin, 163 N.J. 677, 690, 751 A.2d 102 (2000).
Finally, defendant's contention that plaintiff should be precluded from raising his fraud based claim because he waived the entire controversy doctrine by not pleading it timely is without merit. The doctrine "encompasses a mandatory rule for the joinder of virtually all causes, claims, and defenses relating to a controversy between the parties engaged in litigation." Cogdell v. Hospital Ctr. at Orange, 116 N.J. 7, 16, 560 A.2d 1169 (1989) (emphasis added). It thereby prevents "the evil of ... piecemeal litigation of fragments of a single controversy." Wm. Blanchard, supra, 150 N.J.Super. at 292-93, 375 A.2d 675. The application of the doctrine is intended to prevent a party from voluntarily electing to hold back a related component of the controversy in the first proceeding by precluding it from being raised in a subsequent proceeding thereafter. Ibid. Although only to be used as a last resort, R. 4:30A codifies the preclusion sanction imposed by the entire controversy doctrine in the event a party fails to join claims that are required to be joined. Gelber v. Zito Partnership, 147 N.J. 561, 565, 688 A.2d 1044 (1997).
The doctrine simply has no application under the circumstances presented here. It would only apply if plaintiff had failed to raise his fraud based claim before disposition of the initial medical malpractice action. In that event, defendant could raise it as an affirmative defense to preclude a subsequent action. Its only relevancy to the facts here is that the specific claim for which plaintiff sought leave to amend is the very type of claim that would be precluded in future litigation if not raised during the pendency of this action. The record before us fails to disclose undue prejudice to defendant either from the validity of plaintiff's amended claim or the timing of the motion. Simply put, the interest of justice requires joinder because plaintiff's claims of negligence and fraud arise out of the same controversy.
Reversed.
NOTES
[1] As Joseph Howard suffered from the alleged malpractice and asserted injury, we will refer to him as "plaintiff."