590 A.2d 234
STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. ALAN
ROGERS, DEFENDANT–RESPONDENT.

Argued October 23, 1990—Decided May 23, 1991.

*Annmarie Cozzi,* Deputy Attorney General, argued the cause for appellant (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

*Daniel V. Gautieri,* Assistant Deputy Public Defender, argued the cause for respondent (*Wilfredo Caraballo,* Public Defender, attorney).

The opinion of the Court was delivered by

CLIFFORD, J.

The trial court sentenced defendant on two counts of felony murder to consecutive thirty-year terms of imprisonment without eligibility for parole. The Appellate Division vacated those sentences and remanded to the trial court for resentencing, concluding that this case was one in which "the *Yarbough* guidelines may be satisfied by having the [custodial] terms run concurrently in part and consecutively in part." 236 *N.J.Super.* 378, 381, 565 *A.*2d 1128 (1989). See *State v. Yarbough,* 100 *N.J.* 627, 498 *A.*2d 1239, *cert. denied,* 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986). We granted certification to determine whether the Code of Criminal Justice, *N.J.S.A.* 2C:1–1 to 98–4 (Code), and the sentencing guidelines set forth in *Yarbough* permit a court to impose, for multiple offenses, sentences that are partially consecutive and partially concurrent. We conclude that they do not. However, because the trial court did not properly identify the aggravating factors in imposing sentence and failed to consider the facts relating to the crimes in determining that the sentences for the felony murders

should run consecutively, we affirm the disposition of the Appellate Division remanding the case for resentencing.

## I

At approximately 8:10 p.m. on November 26, 1985, Edward Craig and Guyron Walker entered the V & J Tavern in Newark and headed for the telephone booth in the back. After fifteen minutes or so, Craig walked behind the bar, put a gun to the head of the bartender, and announced, "This is it, everybody down." Walker, who had made his way to the front door to serve as Craig's cover during the hold-up, shouted, "All right, you heard him. Everybody on the floor." All but one of the eight to ten patrons complied; James Gilchrist was apparently so drunk that he did not understand the orders. Walker approached Gilchrist, who was still standing, and punched him in the face, knocking him to the floor. Robert Walls, an off-duty Essex County sheriff's officer, reached for his gun. Seeing Walls make that move, Walker fired a shot in the officer's direction. Craig also fired several shots. The barrage killed Nathaniel Taylor, another off-duty sheriff's officer. Walls suffered two bullet wounds, from which he died twenty-two days later. The robbers fled the bar with a purse containing a gold watch, $45, and a small quantity of cocaine valued at $20.

The evidence established that defendant, Alan Rogers, had supplied the guns and had driven the getaway car. The jury convicted Rogers of two counts of felony murder, *N.J.S.A.* 2C:11–3a(3), and one count each of armed robbery, conspiracy to commit robbery, possession of a gun for an unlawful purpose, and possession of a gun without a permit. After merging the convictions for armed robbery, conspiracy, and possession of a gun for an unlawful purpose into the two counts of felony murder, the trial court sentenced defendant for each murder to the statutory minimum term of thirty years of imprisonment without parole. See *N.J.S.A.* 2C:11–3b. Declaring that

"[t]here are to be no free killings," the court ordered that the terms be served consecutively. It also sentenced Rogers to a concurrent five-year term for possession of a gun without a permit.

The Appellate Division, in an unreported decision, reversed defendant's conviction for possession of a gun without a permit but affirmed the other convictions. Addressing in a separate reported opinion Rogers' argument that "the sentence imposed [for the felony murders] was manifestly excessive," the court remanded for resentencing because it concluded that

> *Yarbough* did not require the sentencing judge to impose for this double murder a minimum prison term of 60 years without parole regardless of the circumstances. Where the extraordinarily long term of 30 years without parole is the minimum statutory sentence for each of two crimes, the *Yarbough* guidelines may be satisfied by having the terms run concurrently in part and consecutively in part. [236 *N.J.Super.* at 381, 565 *A.*2d 1128.]

We denied defendant's petition for certification but granted the State's cross-petition, 121 *N.J.* 604, 583 *A.*2d 307 (1990), which was limited to the question of whether a court can impose sentences that run concurrently in part and consecutively in part.

## II

### —A—

Nothing in the Code expressly permits imposition of sentences that are partially concurrent and partially consecutive. Nor, as the Appellate Division pointed out, does anything expressly prohibit it. See 236 *N.J.Super.* at 381, 565 *A.*2d 1128. Section 44–5 of the Code merely states that "[w]hen multiple sentences of imprisonment are imposed on a defendant for more than one offense, * * * such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence." *N.J.S.A.* 2C:44–5a.

The Appellate Division held that partially-concurrent and partially-consecutive sentences were necessary in this case "to resolve an apparent conflict in the *Yarbough* guidelines." 236

*N.J.Super.* at 386, 565 *A.*2d 1128. Those guidelines, designed to guide courts in the exercise of their discretion in fashioning consecutive or concurrent sentences, dictate that

(1) there can be no free crimes in a system for which the punishment shall fit the crime;

(2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;

(3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:

(a) the crimes and their objectives were predominantly independent of each other;

(b) the crimes involved separate acts of violence or threats of violence;

(c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

(d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors;

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense; and

(6) there should be an overall outer limit on the cumulation of consecutive sentences for multiple offenses not to exceed the sum of the longest terms (including an extended term, if eligible) that could be imposed for the two most serious offenses. [*State v. Yarbough, supra,* 100 *N.J.* at 643–44, 498 *A.*2d 1239 (footnotes omitted).]

The purpose underlying those specific standards was to achieve "the Code's paramount sentencing goals that punishment fit the crime, not the criminal, and that there be a predictable degree of uniformity in sentencing." *Id.* at 630, 498 *A.*2d 1239.

In this case the trial court, apparently believing that it was constrained by the first of those guidelines (namely, that "there can be no free crimes in a system for which the punishment shall fit the crime," *id.* at 643, 498 *A.*2d 1239), ordered the thirty-year terms for the felony murders to run consecutively. The Appellate Division also stated that "imposing concurrent sentences here would arguably result in a 'free' murder, contrary to the first guideline." 236 *N.J.Super.* at 382, 565 *A.*2d at 1239. It thus held that "where in order to avoid violating the *Yarbough* guideline that there be 'no free crimes' a judge must impose fully consecutive sentences without regard for mitigat-

ing factors that are present in other *Yarbough* guidelines, the judge may impose sentences that are partially consecutive and partially concurrent." *Id.* at 383, 565 *A.*2d 1239.

—B—

We conclude that the Appellate Division erred in holding that a court may impose partially-concurrent and partially-consecutive sentences. "The paramount goal of sentencing reform was greater uniformity." *State v. Yarbough, supra,* 100 *N.J.* at 635, 498 *A.*2d 1239 (citing *State v. Roth,* 95 *N.J.* 334, 361, 471 *A.*2d 370 (1984)). Under the split-sentencing scheme envisioned by the Appellate Division, however, "trial courts would be free to design sentences that could vary widely. The multitude of possible combinations would hardly foster the goal of uniformity." *State v. Pineda,* 119 *N.J.* 621, 626, 575 *A.*2d 855 (1990) (death-by-auto statute permitting sentence of either imprisonment or community service does not permit court to design split term comprised of both forms of sentence). The Appellate Division's example of the concept of partially-concurrent and partially-consecutive sentences illustrates the unpredictability of that scheme:

> Were the judge here to impose two 30–year prison terms, the second to be concurrent with the first for a term of 15 years and consecutive to the first for a term of 15 years, the aggregate sentence under the statutory formula would be 45 years. That aggregate is arrived at by merging the concurrent 15–year term of the second sentence with the longer 30–year first term and adding the consecutive 15–year term of the second sentence to the 30–year first term. [236 *N.J.Super.* at 384, 565 *A.*2d 1128 (footnote omitted).]

The court "express[ed] no view as to what the ultimate sentence should be," *id.* at 384 n. 3, 565 *A.*2d 1128, nor did it provide any standards to guide the sentencing court in determining when the second sentence should begin to run.

We disagree with the underlying premise of the Appellate Division decision that the imposition of concurrent sentences in this case would violate the *Yarbough* guideline that there be "no free crimes." Under the Appellate Division inter-

pretation of that guideline, every offense for which a concurrent sentence is imposed would arguably result in a "free" crime. We did not intend that that guideline eliminate the concurrent sentence from a court's sentencing options.

Implementation of the "no free crimes" guideline admittedly is not as easy as is the statement of the principle. In *Yarbough* we noted that the

source for a model of sentencing upon which our Code was most closely based posits that it would be senseless "to give the criminal 'free' crimes after a certain number," and suggests that the best solution would be "to devise a sophisticated system in which every additional crime in a series carried an increment of punishment but not the full increment of a consecutive sentence." [100 *N.J.* at 639, 498 *A.*2d 1239 (citations omitted).]

However, we also observed that "[t]hat is an ideal that has not been met in our Code." *Ibid.* In stating that "there can be no free crimes in a system for which the punishment shall fit the crime," *id.* at 643, 498 *A.*2d 1239, we did not intend nor did the Legislature require that under the Code every additional crime in a series carry its own increment of punishment (else there would have been no provision made in the Code for concurrent sentencing in the first place). Rather, for each crime in a series the court should impose a sentence, taking into account the appropriate aggravating and mitigating circumstances set forth in *N.J.S.A.* 2C:44–1a and –1b, before considering whether the sentences should run consecutively or concurrently.

We also disagree with the Appellate Division's determination that "[t]he sentence imposed, two consecutive 30–year terms of imprisonment without parole, is contrary to [*Yarbough*] guideline 5." 236 *N.J.Super.* at 385, 565 *A.*2d 1128. That guideline states that "successive terms for the same offense should not *ordinarily* be equal to the punishment for the first offense." *Yarbough, supra,* 100 *N.J.* at 644, 498 *A.*2d 1239 (emphasis added). In situations such as this case presents, however, in which the court imposes the statutory-minimum sentence for the first of two counts of the same offense, the court has no choice but to impose equal punishment for the second count.

The Appellate Division apparently was persuaded that this was an appropriate case for a partially-concurrent and partially-consecutive sentence "by the fact that the judge must sentence defendant for two crimes each of which carries an extraordinarily long statutory minimum sentence." 236 *N.J.Super.* at 386, 565 *A.*2d 1128. It is true that unlike the real sentence for every other offense, the real sentence for murder, including felony murder, has in effect been frozen by the Legislature at thirty years of hard time. Thus, although a court fashioning a sentence for two armed robberies could mold the consecutive sentences to achieve the goal "that punishment fit the crime," *Yarbough, supra,* 100 *N.J.* at 630, 498 A.2d 1239 (*e.g.,* by imposing an eighteen-year sentence with a nine-year parole bar for the first robbery and a consecutive twelve years with a six-year parole bar for the second), the court's discretion is constrained in the case of two felony murders to an all-or-nothing choice of thirty or sixty years of real time. "When the Legislature imposes minimum penalties for certain offenses, the judiciary must follow that mandate." *State v. Pineda, supra,* 119 *N.J.* at 625, 575 *A.*2d 855. That constraint does not allow any room for judicial revision of the Code's general sentencing provisions.

That the federal and other state sentencing schemes permit partially-concurrent and partially-consecutive sentences does not persuade us that our Code contemplates a similar sentencing option. Because we find no conflict with the *Yarbough* guidelines, we find no need for recourse to a type of sentence not provided by the Code.

### III

■ We hold that the Code does not permit, for multiple offenses, sentences that are partially consecutive and partially concurrent. Nevertheless, we agree with the Appellate Division that the trial court improperly identified the applicable aggravating factors in imposing sentence, see 236 *N.J.Super.*

at 387, 565 *A.*2d 1128 ("The trial judge should not have identified as aggravating factors the fact[s] that the two victims were police officers and that one of them was more vulnerable because he walked with a limp."), and erred in ordering that the terms for the felony murders run consecutively without having first considered all of the *Yarbough* guidelines. See *State v. Louis*, 117 *N.J.* 250, 254–55, 566 *A.*2d 511 (1989). The "no free crimes" guideline does not require the court automatically to impose consecutive sentences for multiple offenses. On remand the trial court should re-weigh the aggravating and mitigating factors set forth in *N.J.S.A.* 2C:44–1a and –1b. The court may then impose the same or different sentences based on those findings. In resentencing defendant and determining whether the sentences should run concurrently or consecutively, the court should consider all of the *Yarbough* guidelines, especially the five "facts relating to the crimes" referred to in guideline 3.

We affirm the judgment of the Appellate Division vacating the sentence imposed by the Law Division and remand the matter to the trial court for resentencing in accordance with this opinion.

*For affirmance and remandment* Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN—7.

*Opposed*–None.