772 A.2d 395

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. WINSTON ROACH, DEFENDANT–APPELLANT.

Argued April 30, 2001—Decided June 4, 2001.

*Joseph S. Murphy*, argued the cause, for appellant.

*Michael J. Williams*, Deputy Attorney General, argued the cause for respondent (*John J. Farmer, Jr.*, Attorney General of New Jersey, attorney).

## PER CURIAM

The facts of this case are set forth at length in our prior opinion in *State v. Roach*, 146 *N.J.* 208, 680 *A.*2d 634 (1996) ("*Roach I*"). Briefly, defendant Winston Roach and two co-defendants, Billy Jackson and Lawrence Wright robbed a gas station in Newark. Two persons were killed during the robbery. Both Roach and Jackson were convicted of two counts of felony murder, two counts of armed robbery, two counts of aggravated manslaughter, conspiracy, and two counts of possession of a weapon for an unlawful purpose. Jackson was sentenced to two concurrent life terms with thirty years of parole ineligibility. Roach, who was thereafter sentenced by a different judge, received two consecutive life terms with a total of sixty years of parole ineligibility, a sentence double that imposed on Jackson.[1] Roach appealed. The Appellate Division affirmed. We granted certification, 142 *N.J.* 573, 667 *A.*2d 190 (1995), and ultimately reversed and remanded the case for re-sentencing. 146 *N.J.* 208, 233, 680 *A.*2d 634, *cert. denied*, 519 *U.S.* 1021, 117 *S.Ct.* 540, 136 *L.Ed.*2d 424 (1996).

In so doing, we recognized that there was nothing intrinsically wrong with Roach's sentence:

In sentencing defendant, the trial court conformed to all sentencing guidelines and followed proper sentencing procedures. Further, the trial court's findings of the aggravating and mitigating factors were amply supported by the record. *State v. O'Donnell*, 117 *N.J.* 210, 216, 564 *A.*2d 1202 (1989). Moreover, the trial court gave

---

[1] Wright also received consecutive sentences of life with thirty years of parole ineligibility. His case is not before us.

extensive reasons for its sentencing decision. *State v. Kruse*, 105 *N.J.* 354, 363, 521 *A.*2d 836 (1987). The trial court acknowledged defendant's role as an accomplice, but determined that the conviction based on accomplice liability did not warrant any greater leniency.

The court followed proper procedures and standards in imposing consecutive, not concurrent, sentences. *N.J.S.A.* 2C:44–5a. Consecutive sentences are not an abuse of discretion when the crimes involve multiple victims and separate acts of violence. *See State v. Louis*, 117 *N.J.* 250, 254, 566 *A.*2d 511 (1989) (rejecting consecutive sentencing that was based on cruelty and inhumanity of crime rather than independent nature of victims or violent acts); *State v. Ghertler*, 114 *N.J.* 383, 392, 555 *A.*2d 553 (1989) (affirming consecutive sentencing that was based on independent nature of multiple criminal acts). Defendant's sentences were based on two convictions for felony murder. The court's findings suggest that the deaths of the two victims were separate acts of violence caused by distinct types of conduct. Even if the murders occurred in close sequence, consecutive sentencing is not improper. *State v. Brown, supra* 138 *N.J.* [481] at 560, 651 *A.*2d 19.. The court also did not believe that there should be any difference between the punishments meted out to Jackson or defendant despite the differences in their roles in the crimes or because defendant was an accomplice. *See State v. Rogers*, 124 *N.J.* 113, 115–16, 590 *A.*2d 234 (1991) (ruling that defendant accomplice who supplied the guns and drove getaway car could be sentenced to two consecutive thirty-year mandatory terms for felony murder convictions).

[*Roach I, supra*, 146 *N.J.* at 230–31, 680 *A.*2d 634.]

Relative to Jackson's sentence however, we found that Roach's sentence

would appear to be a "paradigmatic example of non-uniformity." *State v. Pillot*, 115 *N.J.* 558, 576, 560 *A.*2d 634 (1989). The record strongly indicates dissimilar sentences imposed on similar defendants. Moreover, the disparity between the sentences is not minimal—it is huge: thirty additional years in prison.

[*Id.* at 233, 680 *A.*2d 634.]

Regarding the trial court's explanation for the disparity, we stated:

The record does not present an acceptable justification of defendant's sentence in light of the sentence imposed on his co-defendant. The trial court was cognizant of the sentences imposed on co-defendant Jackson and defendant but felt that it could disregard the sentences imposed on the co-defendant. The court explained that it had the discretion to sentence defendant more severely than the co-defendant because it had "lateral jurisdiction" and considered the co-defendant to have received "a very lenient sentence."

The court's explanation implies that it considered defendant and the co-defendant to be "similar" but that they did not deserve "similar sentences." A disparate sentenced based solely on those reasons is not justifiable.

We explained:

[i]n such circumstances, we hold that the sentencing court must exercise a broader discretion to obviate excessive disparity. The trial court must determine whether the co-defendant is identical or substantially similar to the defendant regarding all relevant sentencing criteria. The court should then inquire into the basis of the sentences imposed on the other defendant. It should further consider the length, terms, and conditions of the sentence imposed on the co-defendant. If the co-defendant is sufficiently similar, the court must give the sentence imposed on the co-defendant substantive weight when sentencing the defendant in order to avoid excessive disparity. Sentencing based on such added considerations will accommodate the basic discretion of a sentencing court to impose a just sentence on the individual defendant in accordance with the sentencing guidelines while fulfilling the court's responsibility to achieve uniform sentencing when that is possible.

[*Id.* at 233–34, 680 *A.*2d 634.]

*Roach I* ended with the following language:

Realistically, sentencing cannot be monolithic when individual judges, no matter how competent and conscientious, impose sentences on individual defendants arising from the commission of separate crimes. If, however, it is feasible to avoid or reduce disparity in circumstances such as presented in this case through the trial and/or sentencing of similar defendants by the same judge, that should be undertaken. *See, e.g., State v. Pillot, supra,* 115 *N.J.* at 576, 560 *A.*2d 634. If those procedural avenues are not available, then sentencing judges should take into account and give substantive weight to the sentences imposed on similar co-defendants. The overarching goals of uniformity demand that reasonable measures be undertaken to achieve that end.

· [*Id.* at 234, 680 *A.*2d 634.]

Despite that directive, on remand, the trial court stated: "I do not understand it to be the Supreme Court instructions to me that I redo my sentencing. My reasons are now fixed." The trial court went on:

After much deliberation, and much review, I have come to the conclusion that the only places upon which I could bring this [c]ourt's sentence in parity with the sentence imposed [the trial court on Jackson], would be to completely disown the record that I have made. To completely disown my considered judgment in this case which I feel a just verdict was imposed—just sentence.... There would be no other basis which could compel me to act.

. . . .

I have [to] take to heart the goal of achieving uniformity. I understand the [c]ourt expected to do that when I can reasonably do that without abandoning my judgment and my discretion.

> In light of the evaluation that I have made, and my statement as to what my sole motivation would be, I consider that to place this [c]ourt in a position of utilizing an extreme measure under the facts and circumstances of this case. As a jurist I was not able to bring myself to do that. That is the best record that I can make. I have given it my best effort, and will be guided by whatever judgment any reviewing court may make.

> It is this [c]ourt's intention at this time to reimpose based upon the same record the sentence that I previously imposed and I will submit my record for review.

Roach appealed and the Appellate Division affirmed. We granted certification, 166 *N.J.* 603, 767 *A.2d* 482 (2000), and now reverse.

■ Without belaboring the point, it is clear to us that the trial court failed to engage in the analysis *Roach I* ordered and simply remained faithful to the original sentence that *Roach I* specifically denominated as "unjustifiable."

■ In so doing, the court not only confounded *Roach I* but also violated the longstanding principles of our jurisprudence that informed it. The fundamental precept of sentencing uniformity is that sentencing should not depend on chance or the luck of the judicial draw. Because "there can be no justice without a predictable degree of uniformity in sentencing," *State v. Hodge,* 95 *N.J.* 369, 379, 471 *A.2d* 389 (1984), more than twenty-five years ago we acknowledged that a disparity may invalidate an otherwise sound and lawful sentence. *State v. Hicks,* 54 *N.J.* 390, 392, 255 *A.2d* 264 (1969). While "a sentence of one defendant not otherwise excessive is not erroneous merely because a co-defendant's sentence is lighter ... [,] grievous inequities in sentences destroy a prisoner's sense of having been justly dealt with, as well as the public's confidence in the even-handed justice of our system." *Id.* at 391, 255 *A.2d* 264 (citations omitted).

Those are the notions that undergirded our decision in *Roach I* and that were not followed by the trial court on the remand. Because our opinion in *Roach I* constituted the law of the case, it not only settled the trial court's obligation on the remand but directs the outcome here. *State v. Hale,* 127 *N.J.Super.* 407, 410–411, 317 *A.2d* 731 (App.Div.1974).

■ In light of the trial court's stance, taken in the face of *Roach I*, we choose to exercise original jurisdiction pursuant to *R.* 2:10–5 and resentence this defendant so that his sentence conforms with that imposed on Jackson. The judgment of conviction should be amended to reflect that the sentences on Counts Six and Seven of Indictment No. 91–11–4687 shall be served concurrently.

COLEMAN, J., dissenting.

For the reasons expressed by me in *State v. Roach*, 146 *N.J.* 208, 234–38, 680 *A.2d* 634 (Coleman, J., concurring in part and dissenting in part), *cert. denied,* 519 *U.S.* 1021, 117 *S.Ct.* 540, 136 *L.Ed.*2d 424 (1996), I disagree with the Court's determination that defendant's consecutive sentences for two felony murders should be modified on the grounds of disparity and non-uniformity. I would affirm the consecutive sentences substantially for the reasons expressed by the trial court and the Appellate Division. It is an abuse of the standard controlling appellate review of sentences articulated in *State v. Ghertler,* 114 *N.J.* 383, 388, 555 *A.2d* 553 (1989), for the Court to reduce a sentence, in the name of disparity, when the sentence complies with all appropriate sentencing guidelines. The guidelines do not mandate that the Court reduce defendant's sentence to make it consistent with a co-defendant's lesser sentence that admittedly was erroneously imposed. The Court's judgment changing the consecutive terms to concurrent terms gives defendant a free murder.

Chief Justice PORITZ and Justice VERNIERO join in this opinion.

*For reversal*—Justices STEIN, LONG, LaVECCHIA and ZAZZALI—4.

*For affirmance*—Chief Justice PORITZ and Justices COLEMAN and VERNIERO—3.