**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2040-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KENNETH C. SAAL,

     Defendant-Appellant.

_____

          Submitted October 17, 2024 – Decided December 9, 2024

          Before Judges Rose and DeAlmeida.

          On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 19-11-1740 and Accusation No. 22-11-0660.

          Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

          Matthew J. Platkin, Attorney General, attorney for respondent (Bethany L. Deal, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Following adverse decisions on various pretrial motions, and a botched plan to kill one of three individuals to better his chances at his murder trial, defendant Kenneth C. Saal pled guilty to first-degree murder, N.J.S.A. 2C:11-3(a)(1), second-degree burglary, N.J.S.A. 2C:18-2(a)(1), and fourth-degree stalking, N.J.S.A. 2C:12-10(b), charged in an eight-count Middlesex County indictment. Defendant also pled guilty to conspiracy to commit murder, N.J.S.A. 2C:5-2(a)(1) and :11-3(a)(2), and conspiracy to commit witness tampering, N.J.S.A. 2C:5-2(a)(1) and :28-5(a)(5), charged in a three-count accusation.

During the factual basis for his guilty pleas under the indictment, defendant admitted he was "intrigued" by his coworker, Carolyn Byington, and in May 2019, he stole her keys, broke into her Plainsboro apartment, and installed hidden cameras therein. Using "cell phone applications for the cameras," defendant "align[ed] the cameras to get the right angle so that [he] could record [Byington]." The following month, during the afternoon of June 10, 2019, defendant stabbed Byington to death with a screwdriver, scissors, and pen when she returned home from work during her lunch break and discovered him surreptitiously installing another camera in her home.

As to the accusation, defendant admitted, while detained pretrial, he agreed to pay his cellmate $15,000 "to kill a young white attractive woman in her late twenties/early thirties in the same or very similar way as [he] killed [his coworker]." He instructed his cellmate to "leave a letter at the crime scene taking accountability for the first murder," thereby exculpating defendant. In the alternative, his cellmate could kill either of two trial witnesses and "make [it] look like a suicide . . . with a fake suicide note that [defendant] drafted."

Defendant was sentenced in accordance with the terms of the global negotiated plea agreement to an aggregate fifty-five-year prison term with an eighty-five-percent parole disqualifier subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. As to the indictment, the court sentenced defendant to a forty-five-year prison term, subject to NERA, on the murder conviction; a concurrent five-year prison term, subject to NERA, on the burglary conviction; and a concurrent one-year "flat" prison term on the stalking conviction. Under the accusation, defendant was sentenced to two ten-year prison terms, subject to NERA, on each conspiracy conviction imposed

concurrently to each other but consecutively to the sentence imposed under the indictment.[1]

Prior to trial, among other applications, defendant filed an omnibus motion raising several suppression issues. Pertinent to this appeal, defendant moved to suppress evidence obtained from his car and cell phone pursuant to search warrants issued the same day by the same Superior Court judge. Following oral argument, the trial court, which did not authorize the warrants, reserved decision. On April 6, 2021, the court issued a comprehensive written decision and memorializing order denying defendant's motions in their entirety. The court summarized the methodical investigative steps undertaken by law enforcement, which lead to the warrants at issue, and thoroughly addressed defendant's contentions in view of the governing law.

---

[1] Pursuant to the terms of the plea agreement, on the State's motion, the judge dismissed the remaining counts of the indictment: third-degree endangering an injured victim, N.J.S.A. 2C:12-1.2(a), third-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4(d), fourth-degree tampering with evidence, N.J.S.A. 2C:28-6(1), third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(1), and third-degree burglary, N.J.S.A. 2C:18-2(a)(1); and the remaining count of the accusation, second-degree conspiracy to hindering apprehension through force against a witness, N.J.S.A. 2C:29-3(b)(3).

A-2040-22

Before us, defendant reprises his challenges to the search warrants for his car and cell phone. In the alternative, he seeks a remand for resentencing. More particularly, defendant raises the following points for our consideration:

POINT I

DEFENDANT WAS SUBJECTED TO AN UNREASONABLE SEARCH AND SEIZURE BECAUSE THE AFFIDAVIT IN SUPPORT OF THE APPLICATION FOR A SEARCH WARRANT FOR DEFENDANT'S CAR ASSERTED INSUFFICIENT FACTS TO SUPPORT A FINDING OF PROBABLE CAUSE. U.S. Const. amends. IV and XIV; N.J. Const. art. I, [¶] 7.

POINT II

THE WARRANT AUTHORIZING THE SEARCH AND SEIZURE OF DEFENDANT'S CELL PHONE IS UNCONSTITUTIONALLY OVERBROAD BECAUSE IT HAS NO TEMPORAL LIMITATION AND DOES NOT SPECIFY THE THINGS TO BE SEIZED BUT INSTEAD PERMITS THE POLICE TO GENERALLY ACCESS, EXAMINE, AND DOCUMENT ALL INFORMATION ON THE PHONE. U.S. Const. amends. IV and XIV; N.J. Const. art. I, [¶] 7.

    A.  A valid warrant must limit digital searches by time frame.

    B.  A valid warrant must limit digital searches by the substance and type of data sought.

A-2040-22

C. The warrant here was unconstitutionally overbroad and requires suppression of the evidence found on defendant's phone.

POINT III

THE MATTER MUST BE REMANDED FOR AN ASSESSMENT OF THE OVERALL FAIRNESS OF THE SENTENCE AND A PROPER YARBOUGH[2] ANALYSIS.

We reject these contentions and affirm.

I.

Well-established principles guide our review of the challenged warrants. A search executed pursuant to a warrant enjoys the presumption of validity. See State v. Boone, 232 N.J. 417, 427 (2017). "Reviewing courts 'accord substantial deference to the discretionary determination resulting in the issuance of the [search] warrant.'" Ibid. (alteration in original) (quoting State v. Jones, 179 N.J. 377, 388 (2004)). "Doubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" State v. Keyes, 184 N.J. 541, 554 (2005) (quoting Jones, 179 N.J. at 389).

The defendant, therefore, bears the burden of challenging the search, and must "prove 'that there was no probable cause supporting the issuance of the

---

[2] State v. Yarbough, 100 N.J. 627 (1985).

warrant or that the search was otherwise unreasonable.'" Jones, 179 N.J. at 388 (quoting State v. Valencia, 93 N.J. 126, 133 (1983)). Probable cause exists where there is "a reasonable ground for belief of guilt" based on facts of which the officers had knowledge and reasonably trustworthy sources. State v. O'Neal, 190 N.J. 601, 612 (2007) (quoting State v. Moore, 181 N.J. 40, 46 (2004)).

When issuing a search warrant, a judge must consider the totality of the circumstances to determine whether probable cause exists. State v. Novembrino, 105 N.J. 95, 122 (1987) (adopting the totality of the circumstances test set forth in Illinois v. Gates, 462 U.S. 213, 238 (1983)). "In the case of a warrant, 'the probable cause determination must be made based on the information contained within the four corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously.'" State v. Wilson, 178 N.J. 7, 14 (2003) (quoting Schneider v. Simonini, 163 N.J. 336, 363 (2000)). "Even in the context of a cellular phone search, a valid warrant requires 'probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched.'" State v. Missak, 476 N.J. Super. 302, 316 (App. Div. 2023) (quoting State v. Sullivan, 169 N.J. 204, 210 (2001)).

Because a court's determination on the adequacy of probable cause supporting a search warrant is a legal determination, we undertake a de novo review of its decision. See Boone, 232 N.J. at 426.

A.

We first address defendant's challenge to the validity of the search warrant for his vehicle, issued in the late afternoon of August 19, 2019, two months after the homicide. Defendant claims the detective's affidavit failed to establish probable cause because it contained "only two pieces of information that could relate to defendant's involvement in the homicide," whereas "most of the affidavit" did not reference him. At issue are the final two paragraphs of the affiant's seven-paragraph factual recitation:

> F. On June 19, 2019, [defendant] a co-worker of . . . Byington was interviewed. [Defendant] agreed to provide a buccal swab sample during this statement. [Defendant] stated that he did leave work and went to a parking lot to work on his car described as a 2006 Honda Accord NJ Plate # [XXXXXX]; Vin: [XXXXX XXXXX XXXXX XX]. [Defendant] came back to work after a significant period [of] time had passed. [Defendant] provided a cell phone number for himself as (732) [XXX-XXXX].
>
> G. On August 19, 2019, I received confirmation from Frank Basile of the Union County Lab that [defendant]'s buccal swab sample could not be excluded from the DNA found on the fingernail clippings of . . . Byington.

8

Acknowledging paragraph F implied he "had the opportunity to commit the crime," defendant nonetheless argues that assumption neither was explicitly stated within the four corners of the affidavit, nor does the record reveal any indication "that the detective offered contemporaneous sworn testimony to clarify this omission." Defendant further argues, even "more troubling" the affiant's declaration concerning defendant's DNA was not tethered to "a statement of statistical significance." We are unpersuaded.

As the trial court recognized, the preceding paragraphs of the search warrant affidavit delineated the facts known to law enforcement at the time of the application. Those facts included the time frame of the murder based on information provided by Byington's coworkers, who told police the victim "left work sometime around 1pm to go to lunch then never returned and would not return any messages or calls from numerous employees." According to the affidavit, the victim's downstairs neighbors stated, "they heard a female screaming between approximately 1pm and 2pm and then . . . heard moving around for approximately ten minutes." The affiant further disclosed local police found Byington's lifeless body later that day and "[t]here did not appear to have been forced entry into the residence."

Contrary to defendant's contentions, the affidavit sufficiently set forth his opportunity to commit the murder based on the probable time frame of the crime and defendant's admissions not only that he drove the car on the day of the murder, but also that he left work and returned "after a significant period [of] time had passed."  Moreover, the affidavit included the forensic results of defendant's consensual buccal swab sample, which "could not be excluded from the DNA found on" Byington's "fingernail clippings."  As the trial court found, "[b]ased on the totality of these circumstances, a fair inference could be drawn that there existed probable cause to believe that [defendant] may have been involved in the murder of . . . Byington."  The court elaborated:

> The information provided by the lab opened a door to investigate a potential suspect, who detectives knew left the office at or around the same time as . . . Byington, owned a vehicle that would make traveling to her apartment at that time easy, and for which a search could provide evidence of his involvement in the murder, e.g., blood, a weapon, or hair.

The court thus concluded, because the warrant was sought on the same day the DNA findings were disclosed to the affiant, "the particularity requirement was met, and the warrant was executed in a timely manner."

Having conducted a de novo review of the record in view of the applicable law, we discern no basis to disturb the court's decision.  We affirm substantially

10

for the reasons stated by the trial court and conclude defendant's renewed contentions on appeal lack sufficient merit to warrant further discussion in a written opinion, R. 2:11-3(e)(2), beyond the brief comments that follow.

In his merits brief, defendant notes during oral argument before the trial court his attorney raised the affidavit's omission of a statement of statistical significance concerning defendant's buccal swab results, but the court failed to address his argument in its written opinion. However, during argument before the court, the State explained DNA testing utilized by its laboratory does not identify a perpetrator; instead, it excludes individuals who could not be the source of the DNA. According to the prosecutor, "the fact that any male relative of . . . defendant could be potentially in th[e] same statistical range" would be explained by an expert at trial. In its responding brief, the State explains the Y-STR DNA analysis utilized in this case has evidentiary value at trial. See State v. Calleia, 414 N.J. Super. 125, 150 (App. Div. 2010), rev'd on other grounds, 206 N.J. 274 (2011) (recognizing the Y-STR DNA analysis is "relevant" and "probative" in demonstrating a suspect cannot be excluded from a "class of individuals who could have 'contributed' . . . biological material").

Defendant's argument is misplaced. A search warrant is an investigative tool, issued upon probable cause. See Jones, 179 N.J. at 388. Accordingly, to

obtain a warrant to search defendant's vehicle, law enforcement was not required to demonstrate the DNA results definitely established defendant was the perpetrator. Rather, the totality of the circumstances, including the DNA results and defendant's use of the car during the time frame of the murder, gave rise to probable cause. See State v. Evers, 175 N.J. 355, 383 (2003) (recognizing "the proofs in support of a search warrant" are "examined in a common-sense and not a hyper-technical manner").

B.

We next address defendant's challenges to the search warrant for his cell phone. The warrant was issued pursuant to a telephonic application on August 19, 2019, after police seized defendant's "black Google Pixel cell phone" from his vehicle pursuant to the warrant issued by the same judge earlier that day. The warrant permitted police to search defendant's phone for "text messages, emails, [and] internet search[es] . . . related to the homicide or things of that nature." Defendant argues the warrant was "unconstitutionally overbroad" because it lacked "any limitation on the areas of the phone that could be searched []or the time period that information was accessed or created." Defendant's contentions are unavailing.

As the trial court astutely recognized, when the issuing judge approved the search warrant for defendant's phone, she "was familiar with the case" having previously "reviewed multiple affidavits prepared by [the same] detective" and found probable cause "for various searches throughout th[e] ongoing [murder] investigation." The detective explained to the issuing judge that law enforcement determined the phone seized by police "show[ed] up inside our tower (inaudible) near the location at the time of the murder"; and defendant "left for an extended lunch period and came back" to work wearing "a different shirt."

The issuing judge thus authorized a telephonic warrant to search defendant's phone, limited to "text messages, emails, [and] internet search[es]" for "any information pertaining to [the] investigation." Importantly, the court limited the cell phone search to "communications or searches that [defendant] had . . . around the time of the murder." See State v. Reldan, 100 N.J. 187, 194 (1985) (upholding a search warrant permitting the seizure of evidence related to burglaries linking the defendant to two murders, as well as "anything else of evidentiary value that a complete and thorough search might disclose").

We conclude, as did the trial court, the warrant neither lacked particularity, nor was overbroad. The issuing judge authorized the warrant for

defendant's phone, which was seized from the car he drove on the date of the murder and was active at a cell phone tower within close proximity to Byington's residence "around the time of the murder." We therefore discern no reason to disturb the court's decision.

II.

Lastly, we turn to defendant's sentencing argument. Defendant tersely states the "court conducted a brief Yarbough analysis," but does not expressly challenge the court's findings. Instead, defendant claims the court failed to explain the overall fairness of the consecutive sentences imposed under State v. Torres, 246 N.J. 246, 267-68 (2021) (reiterating Yarbough's requirement that the sentencing court place on the record "[a]n explicit statement" of reasons for imposing consecutive sentences, which should address the overall fairness of the sentence). The record belies defendant's contentions.

As a preliminary matter, we are satisfied that the trial court's imposition of consecutive sentences conformed with the factors enumerated by our Supreme Court in Yarbough. As the Court has explained, "[t]he Yarbough factors are qualitative, not quantitative," and "applying them involves more than merely counting the factors favoring each alternative outcome." State v. Cuff,

239 N.J. 321, 348 (2019).  Instead, the sentencing court must consider all the Yarbough guidelines, with emphasis on the five subparts of the third guideline: (1) "the crimes and their objectives were predominantly independent of each other"; (2) "the crimes involved separate acts of violence or threats of violence"; (3) "the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior"; (4) "any of the crimes involved multiple victims"; and (5) "the convictions for which the sentences are to be imposed are numerous."  See State v. Rogers, 124 N.J. 113, 117 (1991).  In applying the factors, "[t]he focus should be on the fairness of the overall sentence, and the sentencing court should set forth in detail its reasons for concluding that a particular sentence is warranted."  State v. Miller, 108 N.J. 112, 122 (1987).

In its assessment of the Yarbough factors, which supported consecutive sentences in this case, the court found there were "separate victims" and the conspiracy to commit murder "was at a separate time and date" years after the defendant killed Byington.  The court also noted it was statutorily mandated to impose consecutive sentences on the conspiracy to commit witness tampering conviction.  See N.J.S.A. 2C:28-5(e) (providing a sentence for a witness tampering conviction shall be imposed consecutively to the sentence imposed

15

for "a conviction of an offense that was the subject of the official proceeding or investigation").

Moreover, in its oral pronouncement of sentence, the trial court expressly stated the "negotiated sentence" was "fair[,] in the interest of justice." The judgments of conviction for the indictment and accusation each echo the court's fairness finding. In view of the circumstances of the offenses to which defendant pled guilty, we discern no reason to disturb the aggregate sentence imposed, which is not manifestly excessive or unduly punitive, does not constitute an abuse of discretion, and does not shock the judicial conscience. See State v. O'Donnell, 117 N.J. 210, 215-16 (1989); see also State v. Miller, 237 N.J. 15, 28 (2019).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION